JOHNSON BROS., Appellant, v. JOHN I. WRIGHT.

**Sale of land:** COMMISSIONS. To entitle a real estate agent, who does
1 not have an exclusive agency, to a commission under an agreement
to find an acceptable purchaser, the principal must either have
actual notice of a valid contract of sale or the vendor and pur-
chaser must be brought together, prior to a contract of sale made
by the principal with another.

**Agency:** REVOCATION. Where authority to make a sale of land is not
2 exclusive, a contract through another revokes the agency *eo
instanter*.

**Sale by agent:** NOTICE TO OWNER. A telegram notifying the owner of
3 an agent's sale of his land does not constitute notice until the
message is delivered.

**Estoppel.** Where the owner did not refuse to sell because of mutual
4 mistake in the proffered contract, he could not thereafter insist
upon the error.

**Agency:** EVIDENCE OF EXTENSION. Evidence considered and held to
5 constitute an extension of agency.

*Appeal from Kossuth District Court.*— HON. W. B. QUAR-
TON, Judge.

THURSDAY, APRIL 7, 1904.

ACTION for commission for finding purchaser of land.
Judgment as prayed, from which the defendant appeals.—
Reversed.

*Andrew Miller,* for appellant.

*Patterson & Gordon* and *Sullivan & McMahon,* for
appellees.

LADD, J.— In the fall of 1900 the defendant listed
with plaintiffs a half section of land, situated in Kossuth

county, at $40 per acre net to him. All above that amount was to be commission for their services in finding a purchaser. The purchaser was to assume a mortgage of $2,400 on each quarter section, and $5,000 was to be paid in cash, or else $1,000 in cash and $4,000 in thirty days. There was some controversy as to terms which the verdict resolved in favor of plaintiffs. On the 28th of March, 1901, they procured from one E. G. Seymour a contract to buy the land, and notified defendant by telegram the next morning, and were advised that he had sold to another. He had listed the land with one Dressman, who had secured a written agreement to buy one quarter section from Willie and Martin Kaduse on the 24th day of March, 1901, and defendant had signed this on the 29th of March, about four o'clock in the afternoon. Whether this was before he received plaintiff's telegram is in dispute, defendant declaring it to have been before, and the members of the plaintiff firm testifying that defendant had subsequently admitted that it was afterwards.

The court instructed the jury that, if the contract with Seymour was made before that with the Kaduses was signed by the defendant, plaintiffs were entitled to recover. **1. SALE OF LAND: commissions.** We think this was error, and that the jury should have been told that, unless defendant received the telegram advising him of the proposed sale to Seymour before he signed the contract of sale to the Kaduses, plaintiffs were not entitled to their commission. The agency was to find a purchaser on certain terms, and, in order to earn the commission, it was incumbent upon plaintiffs to furnish a person ready, able, and willing to buy on the terms fixed. To accomplish this, where no sale is actually made, either a valid obligation to buy must be procured and tendered to the principal, or the vendor and proposed purchaser must be brought together, so that the vendor may secure such a contract if he wished to do so. It is not enough that a parol offer to buy be made to the agent.

The proposition should be to the principal, to the end that the statute of frauds may be obviated by reducing the agreement to writing. *Mattingly v. Pennie,* 105 Cal. 514 (39 Pac. Rep. 200, 45 Am. St. Rep. 87); *Gunn v. Bank of California,* 99 Cal. 349 (33 Pac. Rep. 1105); *Sibbald v. Iron Co.,* 83 N. Y. 378 (38 Am. Rep. 441); *Hayden v. Grillo,* 35 Mo. App. 647; *Yeager v. Kelsey,* 46 Minn. 402 (49 N. W. Rep. 199).

These rules are often stated in different language, but the decisions affirming them in principle seem to be uniform. The agent only finds the purchaser by being the means of furnishing him to the principal as a buyer to whom the sale might have been made but for the principal's perversity, and the cases cited by appellees go no further than to hold that such perversity, *i. e.,* refusal to sell as proposed, will not defeat the right to recover the agent's commission as stipulated. *Cassady v. Seeley,* 69 Iowa, 509; *Ford v. Easley,* 88 Iowa, 603; *Bird v. Phillips,* 115 Iowa, 703, merely holds that a written agreement with the proposed purchaser is not essential. A purchaser ready, able, and willing to buy on the seller's terms was proffered, and this was held sufficient, in the absence of a written agreement. Surely a purchaser has not been found unless the agent has been the means of procuring a person who has either bound himself in writing to buy, and advised his principal of the fact, or who has indicated his readiness to consummate the purchase to the only person who can sell. In the instant case, Seymour had obligated himself in writing, and was such a purchaser as defendant might require, but he was not found to the defendant until the latter was advised of his readiness to take the land. Until a buyer who has obligated himself to purchase, or is ready to do so, has been proffered in some way by the agent to his principal, the contract to find a purchaser has not been fulfilled. These principles are well expressed in *Hayden v. Grillo, supra:* " This contract on the part of a broker is complete when he

delivers or tenders to the owner a valid written contract, containing the terms of the sale agreed on, signed by a party able to comply therewith, or to answer in damages if he should fail to perform. This is all the agent can do, and when this is done he is entitled to his commission. But the necessity of a written contract of sale may be rendered unnecessary if the agent bring the vendor and vendee together, and the latter is able and willing, and offers, to complete the contract, provided the vendor will make the conveyance. In such a case the agent has done all that he can do, and if the vendor, under such circumstances, refuse to complete the sale, he nevertheless will be compelled to pay the agent his commissions. * * * The reason of the foregoing rule is very apparent. The object of the vendor is to effect a sale of his property, and, when the real estate broker produces a contract executed by a solvent purchaser, he is then entitled to pay for his services, whether the trade is finally consummated or not, because, if the vendee refuses to take the property, the vendor holds the contract, which renders the former liable for all damages (including commissions paid by the vendor to the broker) for a failure to comply."

The defendant testified that he reserved the right of sale for himself or through other agents, and, if so, the plaintiffs took the risk of producing a buyer before the land should be sold. If the land was sold to the Kaduses before they found a purchaser, their authority as agents was thereby revoked *eo instanter.* *White v. Benton,* 121 Iowa, 354. Prior to such sale, defendant had the option of conveying to whom he pleased. He might have revoked plaintiffs' authority upon receiving notice from Dressman on the 24th of March. *Chambers v. Seay,* 73 Ala. 372; *Brown v. Pforr,* 38 Cal. 350; *Stensgaard v. Smith,* 43 Minn. 11 (44 N. W. Rep. 669, 19 Am. St. Rep. 205); *Milligan v. Owen,* 123 Iowa, 285. He chose not to do so, and thereby took the risk of having them present an acceptable

6. AGENCY: revocation.

purchaser.  If they did so before an actual sale, there is no ground for denying them the compensation earned, even though the sale was subsequently made to another.  The owner in such a case takes the chance of being required to pay several commissions.  The means of protection, however, are at hand, for he is at liberty to revoke all other agencies by prompt notice, upon presentation of the first acceptable purchaser.

The understanding that plaintiffs should wire or write defendant if a sale could be made was merely an arrangement with respect to the mode of communication, and in no sense constituted the telegraph company his agent.  Notice to it was not notice to him, and Seymour as a purchaser was not found for defendant until the latter was advised of the proposed sale by the receipt of the telegram on the 29th of March.  If the land or a part of it had been sold prior to that time, no recovery for commission may be had.

**3. SALE BY AGENT: notice to owner.**

In preparing the written contract of Seymour, the payment to be made in thirty days was by mistake inserted $4,634, instead of $5,634, as all the witnesses agree it should have been.  The defendant did not refuse to sell on this account, and, as Seymour was ready to make the correction and pay the proper amount, the discrepancy furnished the defendant no excuse for refusing to make the sale.

**4. ESTOPPEL.**

The defendant also insists that the agency was to expire in thirty days from February 6, 1901, and had not been extended.  But he had written March 17, 1901:  " Have you any prospects for the sale of the half section of mine ?  If you can get forty dollars net to me would sell it for that in the next thirty days, as I could use the money to a good advantage.  If you find a buyer write or wire me at Ulen, Minnesota (Box 14), and if I am not there it will be forwarded to me at once."  The reference was to what had been accomplished under the agency as it had

**2. AGENCY: evidence of extension.**

existed, and in referring thereto, and proposing to sell, without mentioning terms other than those under which Johnson Bros. had been authorized to procure a purchaser, he gave them the right to understand that the same terms would be acceptable during the period stated in the letter.

Points raised in the motion for new trial are not considered, for the reason that the motion was not filed within the time required by law.— REVERSED.