J. H. BROOKE v. JENNIE BYRNES, Appellant.

**Commission for sale of real estate:** SUFFICIENCY OF EVIDENCE. On a review of the evidence it is held that plaintiff did not find a purchaser for the property prior to a sale by the owner and therefore was not entitled to a commission.

*Appeal from Johnson District Court.*— HON. O. A. BYING-TON, Judge.

WEDNESDAY, MARCH 13, 1907.

ACTION for commission alleged to have been earned in finding a purchaser of real estate. From judgment as prayed, the defendant appeals.— *Reversed.*

*Wade, Dutcher & Davis,* for appellant.

No appearance for appellee.

LADD, J.— The defendant's son, Ralph Byrnes, employed plaintiff to find a purchaser for her house and lot, at the compensation allowed by the jury, and the only question raised on this appeal is whether a purchaser was found on the terms proposed prior to the sale of the property to another. If not, recovery should not have been allowed. *Ingold v. Symonds,* 125 Iowa, 82; *Johnson v. Wright,* 124 Iowa, 61; *White v. Benton,* 121 Iowa, 354. The plaintiff induced Dr. Smith to examine the premises with a view of purchasing, and with Byrnes called on him one Saturday evening in May, 1895. After some parley Byrnes proposed to sell the property, with certain repairs made, for a specified price. Smith testified that he responded that he " would like to have until Monday morning to go down and look over the furnace," and then later on, that they arranged that

" it was all right for me to go with Brooke on Monday morning over to the property and decide then." On Monday, according to Smith's testimony, he met plaintiff and Byrnes at the house, where they talked concerning the repairs Byrnes was to make, fixed upon the time possession was to be given, when Byrnes said he had other matters to attend to, and that Brooke and Smith could close the deal. About five minutes thereafter Smith indicated to Brooke that he would accept Byrnes' proposition. This was about eight o'clock a. m., and shortly thereafter Byrnes sold the property to one Davis, and so informed Smith and Brooke, when advised between three and four o'clock in the afternoon that they had reached an agreement.

Had Smith accepted Byrnes' proposition before he left the house? The court instructed the jury that, if he had not, paintiff did not find a purchaser before his agency had been revoked by the sale to Davis. Adverting again to Smith's testimony, which was that most favorable to plaintiff, we find that, while he says in one instance that he told Byrnes that he would take the property, he explained later that this was but his inference from the fact that he had said to him that he had found nothing wrong with the furnace. He further testified: " I was to take the property at $5,500 if the furnace stood the examination. I was to have the option of examining the furnace on the following Monday morning. I had a talk with Byrnes over at the property on Monday morning. Q. What did you say about the condition of the furnace at the time? A. I said I could not find anything wrong with it. I asked him how much coal they burned and how much heat they got; and such things as that. . . . On Monday morning I examined the furnace. Q. And did you find it all right? A. I thought so. Q. What did Byrnes say, then? A. He said that he was required to go down town, and he said that Brooke and I could close the deal without him. Q. Did you ever tell Byrnes you would take the property? A. Not in so many

words; but he so understood it.   Q. Why did you want to call Byrnes up over the telephone? [This was at 12:30 o'clock].   A. I thought I ought to tell him about it.   He ·left the matter with Brooke and me to close, and we closed; and I wanted to tell him so.   Q. How did you close the deal with Brooke?   A. I told him he could consider the property sold." It is manifest from the account that Smith had not accepted Byrnes' proposition when the latter left the house, even though the former found nothing wrong with the furnace.   This was not made a condition to the acceptance of the offer.   He reserved the right to inspect, but did not agree to take the property if he found nothing wrong with it.   If he was to have the time to examine, he had done so before Byrnes left, and the fact that he afterwards said to Brooke that he could consider the property sold clearly indicates that he did not understand he had previously accepted Byrnes' proposition, as also does his attempt to notify Byrnes by telephone some four hours later. His statement of what Byrnes understood was but his inference from the circumstances related, and, regardless of whether correct or not, the evidence is conclusive that Smith had not indicated his acceptance until after Byrnes had left the house, and that Byrnes was not advised thereof until long after the bargain with Davis.   Under the instructions the verdict should have been for the defendant, and under authority of the decisions cited the motion to direct should have been sustained.— *Reversed.*