O. W. HILL, Appellee, v. SILAS T. DAKIN, Appellant.

**Agency:** ACTION FOR COMMISSION: PLEADING AND PROOF. In a broker's
1　action for commissions plaintiff must prove his contract as pleaded, and he must show performance on his part, a breach by defendant, and the measure of his recovery as alleged.

**Appeal:** QUESTIONS NOT RAISED BELOW. The appellate court will not
2　consider a question raised for the first time on the appeal.

**Agency:** ACTION FOR COMMISSION: EVIDENCE: SUBMISSION OF ISSUES.
3　In this action to recover a broker's commission the evidence is reviewed at length and held sufficient to justify submission of plaintiff's claim, that defendant agreed to pay him a stated sum per acre

for the sale or exchange of any land by defendant to a purchaser produced by plaintiff, and that such agreement was not limited to any specific lands.

*Appeal from Hamilton District Court.*—Hon. C. G. Lee, Judge.

Thursday, November 13, 1913.

Action to recover a commission for finding a person who would buy or trade for lands listed with or owned by the defendant. It is alleged that defendant agreed to pay plaintiff $1 per acre for any such purchaser; that he found and procured one with whom defendant made an exchange of lands; and that he is entitled to the sum of $1 per acre, or $320, as his commission. The defendant's answer was a general denial, and upon the issues joined the case went to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Wesley Martin,* for appellant.

*Rube McFerren* and *G. D. Thompson,* for appellee.

Deemer, J.—The issues have been sufficiently stated, and the case turns largely upon the sufficiency of the testimony to support the verdict, although some legal propositions are incidentally involved.

It is fundamental, of course, that plaintiff must prove his case as made in his petition. That is, he must establish the contract as pleaded, show the performance thereof by him, and a breach thereof by the defendant, and the measure of his recovery as alleged.

1. Agency: action for commission: pleading and proof.

Defendant's counsel strenuously argue that this the plaintiff did not do; that the verdict has no support, either in

law or in the testimony; and that the verdict and judgment

2. APPEAL: ques-
tions not
raised below.

should be set aside. A suggestion is made in argument that plaintiff cannot recover because he was the agent for both parties, receiving a commission from each, all without the knowledge or consent of the defendant; but this point does not seem to have been made in the trial court, and consequently will not be considered here.

The trial court submitted the case to the jury upon the theories shown by the following instructions:

III. The material question for you to determine in this case is the terms of the oral contract made between the plaintiff and the defendant. If the plaintiff has shown, by a

3. AGENCY: action
for commis-
sion: evidence:
submission of
issues.

preponderance of the evidence, that it was the agreement between himself and the defendant that the defendant would protect him to the amount of $1 an acre on any land which he as owner or agent should sell or trade to a buyer produced by plaintiff, then, under the facts in this case, plaintiff would be entitled to a verdict at your hands against the defendant for the sum of $320. But if it was the agreement between the plaintiff and the defendant that defendant should be liable only for such lands as were owned or controlled by defendant, and the 320-acre farm situated in Dodge county was not in such list, then plaintiff cannot recover. IV. If the agreement between the plaintiff and defendant was to the effect that plaintiff should have a commission of $1 an acre in case of sale or trade by him of any land which the defendant might own or have listed as agent there or thereafter within a reasonable time to the customer produced by plaintiff, then plaintiff will be entitled to recover the sum of $320 in this case. But if, by the terms of the oral contract between the parties, it was not contemplated that defendant should be liable for a commission to the plaintiff, in case he should trade to a customer produced by plaintiff land other than the lands included in the list given to the plaintiff or other than the lands which he then owned or controlled, and he did not at the time own or control the land which it is admitted he sold to Schmedika, then plaintiff cannot recover, and your verdict should be for defendant.

The main proposition is whether or not there was any substantial testimony in support of these instructions. Plaintiff is a real estate agent living at Webster City, and defendant is engaged in a like business in the city of Minneapolis, Minn. On or about February 10, 1911, defendant came to Webster City, Iowa, and had a talk with plaintiff regarding the finding of purchasers for Minnesota land, and in this conversation agreed to pay plaintiff the sum of $1 per acre for his labors. There is some dispute in the testimony as to just what the agreement was; but plaintiff testified substantially as follows:

Dakin, in the office, says to me, 'Now,' he says, 'I have got land of my own, and I have always got lots of other lands for other men for sale or trade,' and he says, 'Anything you might bring to me where I make a deal I will protect you for $1 an acre whether it is mine or other men's land.'

Defendant testified, regarding this, as follows:

I was in conversation with Mr. Hill. I told him I had some land in Southern Minnesota, also a list of lands. I think I handed him a pamphlet—at least, I intended to, if I did not —of the lands I owned and controlled. I says, 'If you get anything for me on the purchase of any of these lands, I will take care of you and a dollar an acre commission.' I won't be positive that I handed him a pamphlet, but I generally do when talking to an agent. I always have them in my pocket, and have a printed list of lands I either own or control. That was the understanding I wanted to infer on him when we were talking.

A witness in corroboration of plaintiff testified:

They were talking about a packing plant Mr. Hill had, I think, for trade or sale, or something like that. They were talking about different deals. I heard Dakin tell Hill that he would take care of him for a dollar an acre for all deals he would bring to him or make with him. . . . He was to have a dollar an acre for all the deals he would bring to him.

Nothing was said about when he was to bring them.  He said any deal they made—'any man you bring that we make a deal through you, I will protect you for a dollar an acre.'  I don't remember about anything being said about this land being owned or listed with Dakin.

A jury was justified in finding that plaintiff was to have a commission for taking any one to defendant to whom he (defendant) sold or made exchange for lands, whether owned by defendant or held by others for sale or trade.  There was also testimony to the effect that, at the time of the original conversation, defendant called plaintiff's attention to some land he had for sale or trade at or near Rochester, Minn., and that plaintiff told him of a man by the name of Schmedika, who owned a packing plant in Des Moines which he would exchange for lands.  Schmedika was called up by phone and asked to go and see the Minnesota land.  This he refused to do until defendant examined the packing plant.  A few days afterward Dakin went to see the plant, and plaintiff was notified to have his man meet him (defendant) at Radcliffe, Iowa, and accompany him to Rochester to look over the Minnesota land.  All parties proceeded to Rochester, and, after looking over the land, Schmedika said that it did not suit him and he would not consider a trade for the property.  Plaintiff testified that defendant then said to him: " 'Now I think I have a tract of land at Dodge Center that would just suit the party.  I will look it up and get it in shape, and I will come down and see you or write you.' " To which he (plaintiff) responded, saying: "All right." Plaintiff saw no more of Schmedika until after he had made a deal with Dakin for an exchange for the Dodge Center land.  Plaintiff further testified, with reference to the Dodge Center land, as follows: "I do not know what land this was he told me he had at Dodge Center.  He did not describe the land to me, nor did he tell me what interest he had in it.  He told me he had a piece of land at Dodge Center that he thought would suit the party.  I think he had the land

listed. It was only necessary to know about how he could make terms. Schmedika had to have certain lands if he traded. The land we took him up there to see didn't suit Schmedika. He (Dakin) claimed it was his own land. He didn't say whether this other land was his own or somebody else's. He said it was at Dodge Center, Minn. All I know is that he traded land at Dodge Center for the packing plant.'' Plaintiff saw Dakin once after the deal was made, but did not say anything to him about it. The trip to Rochester was made on the 21st or 22d day of February, 1911, and Schmedika traded his packing plant for the Dodge Center land about the middle of March.

Schmedika, who was a witness for the plaintiff, testified, in substance, as follows:

. . . During the last year I owned what is known as the Iowa Packing Plant in Des Moines. I made a deal with Silas Dakin, the defendant in this case, for land near Dodge Center, in Dodge county, Minn. I made the deal some time in March, 1911, just about a year ago now. I met Mr. Dakin at Dodge Center. He took me out and showed me the land, and I traded for it. The land suited me, and we finally agreed on terms, and I traded. There were 320 acres. . . . I went to Rochester with Mr. Hill to look at a piece of land with Mr. Dakin. Then I came back. That land didn't suit me; it wasn't what I wanted. Mr. Hill was not my agent. I didn't have him employed in any way. I never agreed to pay him any commission. He got on to this deal. I should have paid him commission if he had started it, but he called me up or wrote me that he had land that would suit the deal for the packing plant. He called me up and told me about this deal. . . . I met Mr. Hill some time along the first part of the year, I should judge. He wrote me, prior to that time, about a piece of land he had in Lincoln county, Minn. It was not this piece of land. I went part way to see that, but Hill missed the train, and I went as far as Elmore and came back. I do not know who had this land that I finally traded for up there for sale. My deed came from G. D. Schultes of Dodge Center. The business was done in Des Moines and at the bank in Dodge Center; I think it was the Farmers' National Bank,

if I am not mistaken. . . . I was up there personally when the terms were reached or arrived at. I had not met Schultes personally at that time. He lived at Dodge Center. My dealings were through a bank at Des Moines. Mr. Lyon deposited the money there. The papers were sent to Des Moines for payment. I turned in the plant at so much and a money difference. The land was more valuable than the plant. I did not hear the question asked there at Rochester whether Dakin had any proposition to put up. The way I came to deal for the property at Dodge Center is this: I had made three different trips to look at property, and had spent a good deal of time, and I did make the offer to Mr. Dakin that if he ever had anything he thought would suit me to let me know. That was after I had turned down the land proposition at Rochester. Mr. Dakin said he had something he thought would suit me. Mr. Dakin did not tell me that day at Rochester that he had another piece of land at Dodge Center. Some time later he wrote me. I told Dakin if he had any other land to let me know. Dakin was not my agent up there. I don't know that I had any agent, because I turned down the proposition. I could do as I pleased. When I turned this deal down, I did not talk commission. I never considered Hill in the deal. When the Rochester piece fell down, it would not suit me, that was all.

Defendant testified on this point as follows:

Mr. Schmedika refused to make a deal there (at Rochester) at that time. I afterwards sold or exchanged property with him. That morning while we were at the depot Schmedika in a conversation says: 'Well, if you are in the land business yourself and run onto anything that will suit me, you know from what I have pointed out coming in what will suit me; why I am ready for a deal.' I afterwards corresponded with him. After their leaving, some two hours or such a matter after that, I found an agent at Dodge Center that had a piece of land listed, and I was talking with him in regard to it, and asked him if he thought his party would make any change. He thought there was a possible chance. Harry Whitney, cashier of the Farmers' National Bank at Dodge Center, was the agent. I did not have that land listed myself. I had no interest in the land outside of the dividing of the commission if I made a deal for him. That

is the only way I was interested. If the deal was made, I was to have $220 as my share of the commission. The agent who had the land for sale was to have the rest. There were 320 acres of land. . . . I didn't consider Hill in the second deal, because Schmedika listed the property with me for exchange right there in Rochester before Hill. It was also asked if I had any other property to be bought, and I told him I had not. It is absolutely not true that I told him I might have that property in Dodge Center. I didn't consider Hill in the second deal at all. . . . I didn't consider he (Hill) was in the deal at all. I didn't consider he had any right in the deal so far as I was concerned, because I got Schmedika to go with the man that had this land listed. I showed Schmedika the land at Dodge Center, and I took him back to introduce him to agent Harry Whitney in the bank, and was just there between trains and only had a short time. Q. You neither had this land as owner, nor did you control it, nor was it listed with you? A. No, sir.

This is practically the entire record in the case, and, although the fact issues are close, we are constrained to hold that there was enough testimony in support of plaintiff's claim to take every issue to the jury. Our conclusion finds some support in *Murphy v. Hiltibridle,* 132 Iowa, 114; *Rounds v. Alee,* 116 Iowa, 345.

The judgment must therefore be, and it is, *Affirmed.*

Weaver, C. J., and Gaynor and Withrow, JJ., concur.