## R. M. BEAMER and H. A. BAUMAN, v. CHARLES STUBER, Appellant.

**Brokers:** ACTION FOR COMMISSION: PERFORMANCE OF CONTRACT. An agent performs his contract to procure a purchaser of land when he produces a buyer ready, able and willing to purchase on the terms proposed, or which are acceptable to the owner. To entitle him to his commission the offer need not be made directly by the purchaser to the owner; it will be sufficient if made under such circumstances that the seller may be required to execute a binding contract. Thus where the purchaser was within calling distance when the agent communicated to the owner the offer of the purchaser, who was ready and willing to reduce the offer to writing if desired, the contract of agency was sufficiently performed to entitle the agent to his compensation.

**Same:** SUBSEQUENT WRONGFUL ACT OF OWNER: EVIDENCE. Where the agent found a purchaser ready, able and willing to purchase on the terms proposed by the owner, the subsequent act of the owner in conveying the property to another would not affect his right to his commission. In the present case the evidence is held insufficient to show that defendant made a pretended sale to another and through him to a purchaser procured by plaintiff, for the purpose of defeating his commission.

**Same:** EVIDENCE. It is incumbent upon a real estate broker when suing for a commission to show that the purchaser produced by him was willing to enter into a binding contract on the terms proposed, and the testimony of the proposed purchaser to that effect is competent.

**Same:** EVIDENCE: PREJUDICE. In this action for commissions for procuring a purchaser, in which plaintiff contended that defendant made an intermediate sale to another party for the purpose of defeating his right to commissions, the evidence of the attorney who prepared the contract of sale that in securing the assent of

the purchaser to a substitution of the intermediate purchaser as seller, instead of the owner, he explained that it was done to avoid the payment of two commissions, was inadmissible; and in view of the fact the attorney was an unbiased witness its admission was not only erroneous but extremely prejudicial as well.

Same.   In an action for commission for the sale of land it is competent to show why the sale to the proposed purchaser was not consummated.

*Appeal from Wapello District Court.*—HONS. FRANK W. EICHELBERGER and FRANCIS M. HUNTER, Judges,

WEDNESDAY, MARCH 11, 1914.

ACTION for commission alleged to have been earned in finding a purchaser for land.   From judgment as prayed, the defendant appeals.—*Reversed.*

*Tisdale & Heindel,* for appellant.

*Jaques & Jaques,* for appellees.

LADD, C. J.—The farm contained two hundred and forty acres, and lay three and one-half or four miles from Eddyville.   The owner, Charles Stuber, had listed it for sale with several agents, among whom were R. G. Beamer and Warner & Hawkins.   Beamer had a working arrangement with H. A. Bauman, who resided at Pella, whereby commissions earned in producing purchasers found by him should be divided. Warner & Hawkins had a similar arrangement with James Jelsma, of Pella.   On July 28, 1909, Garrett and Henry Van Zante, at the instance of Bauman, went out with Beamer to look at Stuber's farm and others.   Henry Van Roekel had examined the farm twice under like auspices, and, with his wife, looked it over again on that day.   Owing to his relationship to Van Roekel (the latter's wife being an aunt of Van Zante's wife), Garrett Van Zante refused to buy, but said to

Beamer that he would purchase the farm at the price named if Van Roekel did not take it. Thereupon, according to Beamer, he left his team in the highway with the Van Zantes, and went over into a hayfield about one hundred and fifty or two hundred yards distant, where Stuber was at work, and informed him that his farm was sold, that, if Van Roekel did not take it, Van Zante would purchase it at the price listed, and Stuber assented thereto. Beamer's testimony, save as to the "conversation had with Stuber," was corroborated by that of Garrett Van Zante, and his statement that Stuber had said he had given Van Roekel a few days' option was somewhat confirmed by Van Roekel's testimony that such an option had been given him. On the other hand, Stuber denied having given any option to Van Roekel, or having stated he had done so to Beamer, and, though saying that before he went to the hayfield Beamer had stated that Van Zante had a notion to buy the farm if Van Roekel did not, and his brother liked it, denied that Beamer had come over from the highway to talk with him in the hayfield, or that any conversation of the kind related by Beamer ever took place. In this, he was corroborated by the testimony of a neighbor who was helping him haul hay. The jury, notwithstanding this conflict, might have found that Stuber had granted Van Roekel a few days' option, and that Van Zante had agreed to buy the land if Van Roekel did not, that Beamer so informed Stuber, and the latter assented thereto. If so, would this constitute the finding of a purchaser?

This duty is performed when the agent finds and introduces to his principal a person who is ready, able, and willing to buy on the terms proposed by or acceptable to said principal.

1. BROKERS: action for commission; performance of contract.

2. Clark & Skyles on Agency, section 771. In speaking on this subject, in *Johnson v. Wright*, 124 Iowa, 61, we said: "The agency was to find a purchaser on certain terms, and, in order to earn the commission, it was incumbent upon plaintiff to furnish a person ready, able, and willing

to buy on the terms fixed. To accomplish this, where no sale is actually made, either a valid obligation to buy must be procured and tendered to the principal, or the vendor and proposed purchaser must be brought together, so that the vendor may secure such a contract if he wishes to do so. It is not enough that a parol offer to buy be made to the agent. The proposition should be to the principal, to the end that the statute of frauds may be obviated by reducing the agreement to writing.'' See *Flynn v. Jordal,* 124 Iowa, 457; *McDermott v. Mahoney,* 139 Iowa, 292; *Nagl v. Small,* 159 Iowa, 387.

This does not necessarily mean that the offer shall be made in person by the purchaser to the seller, but that it shall be made in such circumstances that the latter may then exact the execution of a binding contract if he so elects. There is no reason why the agent of the seller may not communicate to him an offer of purchase, and, if the proposed purchaser is immediately accessible so that a written contract then and there may be executed, and he is ready, willing, and able to consummate the deal, this is enough. The agent is not in a situation to insist that the agreement be oral or in writing. In either event, if entered into, and the proposed purchaser is ready, able, and willing to perform, the agent has earned his commission. To entitle him to recover, then, the *onus* is not upon the agent to prove that the proposed purchaser offered to enter into a written agreement. It is enough if he show that an oral proposition was accepted, without such requirement on the part of the vendor. Here Van Zante was within hailing distance when Beamer had the talk with defendant in the hayfield. Had the latter required that the agreement be reduced to writing, Van Zante was ready and willing to have done so. Though the agreement of sale was conditioned upon Van Roekel taking the land if he could arrange to raise the money, this was necessarily imposed by defendant's conduct in granting the option; but, as such an oral option was not enforceable, and the sale to Van Roekel was not effected, and he did signify to defendant or his agent that he would buy,

the agreement with Van Zante through Beamer cannot be said to have been uncertain. If, then, the facts were as contended by plaintiffs, a purchaser was found by them, and the commission earned. But, if there was no such option, Van Zante could not have insisted upon buying on the condition, nor was defendant bound to accept him as a purchaser on this condition, unless he so elected.

II. Another issue was whether a pretended sale was made by defendant to Hankins, and through him to Garrett and

2. SAME: subsequent wrongful act of owner: evidence.

H. D. Van Zante, for the purpose of defrauding plaintiffs of the commission earned by finding a purchaser for the land. To explain this, a further recital of the evidence is necessary.

On the day after Van Zante visited the farm William Hankins contracted to pay $19,600 for it, the list price having been $20,400, and paid $1,000 down. Thereupon Hankins telephoned to Jelsma, as both testified, that, as he had purchased the farm, it was withdrawn from the market. After some parley, it was finally arranged that, as Jelsma had shown it several times, he might find a purchaser at the list price. Shortly thereafter Jelsma negotiated a sale at that price to Van Zante and his brother. Was this brought about through a fraudulent combination to deprive plaintiffs of the commission earned? It might well have been found from the evidence that Jelsma, who returned to Pella on the same train as did the Van Zantes and Van Roekel and wife in the evening of the day they looked at the land, ascertained that Van Zante had determined to make the purchase, and possibly it might have been inferred that Hankins was advised of this, and that the latter contracted for the land with the design of reaping a profit, rather than allow the commission to go to plaintiffs; but there was no evidence justifying the conclusion that the defendant, Stuber, was connected with this scheme. True, Hankins induced him to sell for $400 less than he was asking, and then to throw off a like amount as commission he would have had to pay if sold through an agent;

but this alone does not indicate any improper motive. The evidence is conclusive that no agreement to share the difference was entered into, and, when a contract of sale to the Van Zantes was presented, he promptly declined to sign, for that he had sold to Hankins, and the contract was changed accordingly. There was evidence that one Fisk had offered defendant $20,000 for the farm some time before. Of course this tended to show that defendant was taking less from Hankins than he could have from Fisk; but the land had been on the market for some time, and the fact that the price was reduced upon the certainty of a completed sale is not sufficient to justify a jury in finding that in so selling the owner acted for the fraudulent purpose of cheating another out of a commission. Moreover, it could not well have had that effect for, if a purchaser had been found in Van Zante, any subsequent action on the part of defendant could not defeat the claim of plaintiffs to a commission. The subsequent sale was negotiated by Jelsma, not by these plaintiffs, and there was no ground for submitting to the jury whether plaintiffs found H. D. and Garrett Van Zante as purchasers at the sale effected by Hankins. Because of the request of defendant that the issues of fraud, and whether plaintiffs had found the purchasers from Hankins, be submitted to the jury, it was not reversible error to have done so. As the propriety of doing so has been challenged and fully argued, we have thought, in view of another trial, that we should pass on the questions.

III. Garrett Van Zante was permitted to testify over objection that, when saying he would buy the land if Van Roekel did not, he was willing at that time to enter into a written contract so conditioned. The ruling

3. SAME: evidence.

was correct. It was incumbent upon plaintiffs to show that the purchaser produced was ready, able, and willing to buy, and, to do this, he must have been ready to have entered into a binding contract, had the seller so required. The ruling was correct.

IV. Van der Ploeg, an attorney, prepared the contract,

and, when it was returned, took it to Van Zante in order to have him assent to the change in substituting Hankins as seller, instead of Stuber, and he thereupon explained that they had changed it "to avoid two commissions out of it, so the other fellows couldn't go in for the commission." This was testified to over objection, and the motion to strike out was overruled. How Van der Ploeg obtained any such information is not disclosed. Jelsma and Van Zante had agreed that he should draw the contract, and, aside from doing that work, he does not appear to have been employed by either party. The statement, coming as it did from an attorney at law who had prepared the papers, and apparently indifferent as between the parties attributing motives such as charged by plaintiffs, and necessarily casting suspicion on the good faith of defendant in refusing to sign the contract, on the ground that he had sold the land to Hankins, was extremely prejudicial. What the statement was based on does not appear, though the natural inference would be that it rested on information he had received from the parties thereto. What he said was likely to be given much weight by the jury, and the ruling must be regarded as not only erroneous but prejudicial.

4. Same: evidence: prejudice.

V. Several other errors are assigned; but, as these pertain to the issues of fraud, and whether plaintiffs found purchasers for the land from Hankins, they require no consideration. Evidence was admissible tending to show why the proposed sale to Garrett Van Zante, if any there was, fell through; but the plaintiffs must necessarily rely on having found him as a purchaser, and this was true even though enough were shown to have justified the submission of the issue of fraud to the jury. The judgment is reversed, solely because of the error in admitting the testimony of Van der Ploeg, for the other errors assigned were obviated by the requests of appellant.—*Reversed.*

5. Same.

All the Justices concur.