Argued January 19, affirmed January 26, 1915.

# KINNEY *v.* ECKENBERGER.

(145 Pac. 665.)

**Brokers—Right to Compensation—Failure to Complete Contract—"Purchase."**

1. Plaintiff agreed, in consideration of assistance rendered him by defendant in securing an option on land owned by the S. Company, to pay defendant a specified commission in case he purchased the property or it was purchased by other parties through him; it being understood that plaintiff would purchase the land for the purpose of reselling it. Plaintiff procured from C. and S. an option to purchase the property or the stock of the S. Company at the election of the sellers, and the time for making payment was subsequently extended by an agreement providing that plaintiff agreed to purchase such of the capital stock as might be in the hands of C. and S., the value of the balance to be deducted from the price, and that plaintiff agreed not to raise any question as to the ownership of the land; this, however, referring to certain minor defects in the S. Company's title. A third agreement recited that plaintiff had forfeited his right to purchase the property or stock and provided that he should be given an opportunity to purchase such stock until a specified date. The S. Company had no marketable title to a large part of the land, and plaintiff did not exercise his option to purchase. *Held,* that all of the agreements with C. and S. were options, though the second agreement somewhat indicated that plaintiff had elected to purchase the property, and, as plaintiff never purchased the property, the broker was not entitled to the specified commission, as "purchase" as used in the agreement meant the acquisition of title or interest in prop-

erty, an executed and not an executory contract, and an option to buy was not an actual purchase nor an executed contract of purchase.

[As to when a broker becomes entitled to commissions, see note in 28 Am. St. Rep. 546.]

#### Cancellation of Instruments—Mistake of Fact.

2. The agreement between plaintiff and defendant having been entered into under a mutual mistake as to the S. Company's title to the land, plaintiff should be relieved from the obligation thereof and the agreement should be canceled.

[As to rescission or cancellation of instrument for negligent mistake of one party, see note in Ann. Cas. 1913A, 432.]

#### Brokers—Right to Compensation—Failure to Complete Contract.

3. A marketable title in fee simple to property desired to be purchased by a principal is necessary to sustain a broker's claim for commissions when the purchaser has not entered into a binding contract to purchase.

From Multnomah: Henry E. McGinn, Judge.

Department 1.    Statement by Mr. Justice Bean.

This is a suit by M. J. Kinney against H. C. Eckenberger to enjoin the defendant from prosecuting a certain action at law and for the cancellation of a contract sued upon in that action. A decree was rendered in favor of the plaintiff, and the defendants appeals.

About the 1st of March, 1902, the plaintiff desiring to obtain an option to purchase the land of the Southern Oregon Company in the counties of Coos and Douglas in this state, and having been advised that one Frank Hoberg was in a position to be of assistance to him in the matter, went to interview him at the office of the defendant Eckenberger where he had desk room. Hoberg was out of the city, but plaintiff informed Eckenberger of his wish, and defendant said he would assist the plaintiff in his efforts for a compensation and would use his influence with Hoberg to bring about the desired results. Plaintiff thereupon made the following agreement with defendant:

"Portland, Oregon, March 1, 1902.

"In consideration of valuable assistance rendered to me by H. C. Eckenberger in securing an option on the property of the 'Southern Oregon Company,' located in the counties of Coos and Douglas, State of Oregon, I hereby agree that in case I purchase said property, or if the property is purchased by other parties through me, to pay to the said H. C. Eckenberger a commission of 2½% on basis of price of six hundred thousand dollars ($600,000.00).

"[Signed]    M. J. KINNEY."

Soon after this plaintiff went to Boston, Massachusetts, and interviewed Prosper W. Smith and William W. Crapo. Hoberg gave him a letter of introduction to Elijah Smith of Boston and also sent a telegram announcing his coming. Prior to that time Hoberg had an agent's option contract upon the property mentioned and was supposed to have some influence with the owners. Plaintiff's trip resulted in an agreement on the 15th day of March, 1902, with William Crapo and Prosper Smith, acting in behalf of the stockholders of the S. O. Company, the owner of the property, whereby plaintiff paid them $5,000, and secured an option to purchase, within three months of that date, the property of the S. O. Company, or all the stock of such company for the sum of $600,000, by the payment of $60,000 August 1, 1902, and the sum of $535,000 within six months, from the date of his election to avail himself of his rights to purchase the property. In the event of a purchase the sellers could at their election deliver the stock or the property of the company in fulfillment of their agreement. It was agreed that, if the sellers elected to deliver the property of the S. O. Company, title thereto should be free and clear. On December 15, 1902, by a supplementary agreement between the same parties, Crapo and Smith agreed to

extend the time of payment on the contract of March 15, 1902, due on that date, until January 15, 1903, without grace, on the following conditions, among others:

"Interest on the deferred payment shall continue as heretofore at five (5) per cent per annum until date of payment; payment to be made in Boston, Massachusetts.   Mr. Kinney agrees to purchase such amount of the capital stock of the S. O. Company, as may be in the hands of Crapo and Smith at the date of the final payment, not less than 13,369 shares."

Crapo and Smith also agreed to deliver to Kinney the 1,547 shares of the stock which belonged to the S. O. Company, as soon as the same could be purchased, and not later than March 1, 1903.   Such stock of the capital of 15,000 shares as might not be in the hands of Crapo and Smith or not delivered would be taken to be worth $41 per share and deducted from the final payment.   The following paragraph is contained in that agreement:

"It having been represented that there is some question in regard to some of the land which is on the list of land supposed to be owned by the S. O. Company, although Mr. Kinney agreeing to buy the stock of the Company of course assumes the responsibility of the title to such land, but in order to make it clearly understood between the parties hereto, Mr. Kinney agrees not to raise any question as to the ownership of that land by the S. O. Company.   Whatever title there may be in the S. O. Company to this property is conveyed to Mr. Kinney."

On February 20, 1903, the same parties entered into a third agreement, in which the two former ones were referred to, and which further recited that:

"Kinney has failed and neglected to make payment as stipulated and has forfeited all right to purchase

said property or stock and the money which has been paid by him.''

It was agreed that for a specified consideration ''the said Crapo and Smith, representing the stockholders of the Southern Company, grant to said Kinney the opportunity to purchase the stock of the S. O. Company until April 10, 1903.'' It was stipulated that all sums paid by Kinney should be retained by Crapo and Smith in the event the contract was not carried out by Kinney. The latter bases his complaint upon the following facts: That he was induced to enter into the written agreement for commissions of March 1, 1902, by Eckenberger's false and fraudulent representations; that Eckenberger performed no service whatever for him in procuring the option thereof referred to, except the letter of Hoberg to Elijah Smith which was not used, and the telegram sent by Hoberg, and that Eckenberger was not instrumental in obtaining the option; that plaintiff never purchased the real property and that it was never purchased by other parties through him. The property of the S. O. Company referred to in the written agreement for commissions consisted of 103,000 acres of land, of which 95,345.12 acres were granted to the State of Oregon by an act of Congress passed March 3, 1869, entitled ''An act granting lands to the State of Oregon to aid in the construction of a military wagon road from the navigable waters of Coos Bay to Roseburg in said state,'' and attempted to be conveyed to the Coos Bay Wagon Road Company, a corporation, by an act of the legislature of Oregon passed October 22, 1870, purporting to grant to said company ''all lands, rights of way,'' and all other rights granted to the state by said act of Congress ''for the purpose

of aiding said company in constructing the road mentioned in said act of Congress and upon the conditions and limitations therein prescribed.''· About May 31, 1875, this property was attempted to be transferred by the Coos Bay Wagon Road Company to one A. R. Woodruff, under the name of John Miller, through whom the S. O. Company derives all the title to such lands that it ever held; that by reason thereof, and because of the conditions and restrictions in the grant, the S. O. Company never acquired any good or commercial title to 95,345.12 acres of the land; that the option thereon of March 15, 1902, was wholly inoperative and void; that Kinney could not at any time purchase the land, nor the S. O. Company sell or convey the same, and that no purchase thereof was ever made or could be made; that said 95,345.12 acres of land was very valuable timber land and constituted nine tenths of the value of the 103,000 acres referred to in the agreement for commissions and without which the option would be of no value; that this was understood between Kinney and Eckenberger; that by reason of the defect in title Kinney was unable to secure the real property mentioned and lost $80,000 in partial payments made upon the option contracts, and damages in excess of $100,000; that a valid purchase or sale of the title to said 95,345.12 acres of timber land under the option was a condition precedent to any claim for commissions by Eckenberger for securing the option or assisting to procure the same; that both Kinney and Eckenberger understood and believed at the time the agreement was entered into that the S. O. Company was the owner in fee simple of the 95,345.12 acres of timber land free from all defects and encumbrances, and could give a good commercial title thereto; that Kinney could secure the same under the op-

tion; that they were mutually mistaken in regard thereto and entered into the agreement solely and only by reason of such belief and mutual mistake, and would not have done so otherwise; that the agreement is inequitable and invalid; that at divers times he had paid Eckenberger $6,980 to avoid litigation.

Defendant Eckenberger alleges that the condtions of the contract have been fulfilled, and that through his influence plaintiff obtained an option upon such property; that the amount less the sum paid left a balance of $17,399.79.                                   Affirmed.

For appellant there was a brief over the name of *Messrs. Chamberlain, Thomas & Kraemer,* with an oral argument by *Mr. Warren E. Thomas.*

For respondent there was a brief over the names of *Messrs. Watson & Beekman* and *Mr. Albert M. Smith,* with oral arguments by *Mr. Benjamin B. Beekman* and *Mr. Smith.*

Mr. Justice Bean delivered the opinion of the court.

1, 2. There is but little controversy in regard to the facts in the case. It appears from the evidence that Kinney expended a large sum of money in cruising the timber on the land and endeavored to make a sale of the property; that negotiations were had with several responsible persons, among the last of whom was a Mr. Woods of San Francisco who examined the land carefully; that when Kinney was called to San Francisco and went there expecting to close the deal with Mr. Woods, thinking the negotiations for a sale of the property were about completed, a telegram published in a newspaper came from Coos Bay reading that 100

persons had made application to the government for the land. Mr. Woods said that he did not want to buy a lawsuit, and that the deal was all off. It appears that Kinney was unable to make any sale on account of litigation questioning the title to the land. The plaintiff asserts and is uncontradicted that the defects referred to in the second agreement made with Crapo and Smith had reference to about 70 minor defects in the title to a small portion of the property near Coos Bay and did not refer to the timber land.

From a careful examination of the three option contracts above alluded to, it appears that Kinney obtained only an option to purchase nearly all the shares of stock of the S. O. Company. It was considered that by obtaining all this stock the title to the land would be obtained. By subsequent developments it was proved otherwise. The agreement between Kinney and Eckenberger based the payment of commission to Eckenberger upon a condition precedent. Kinney thereby agreed that if he purchased the property, or if it was purchased by other parties through him, he would pay the stipulated commission. Kinney never purchased the property, nor did any other parties. Therefore, according to the agreement, he did not become liable for the commission: *Barney* v. *Giles,* 120 Ill. 154 (11 N. E. 206); *Hill* v. *Dakin,* 162 Iowa, 103 (143 N. W. 821); *Allen* v. *Philips,* 2 Litt. (12 Ky.) 1; *Atlantic Avenue R .R. Co.* v. *Johnson,* 134 N. Y. 375 (31 N. E. 903). It was well known and understood by Eckenberger that Kinney's object in obtaining an option on the land was to make a sale thereof to some other party at a profit. It was not expected or contemplated that Kinney would purchase the land for himself. In order for him to make such a sale or

74 Or.—29

for an option to purchase to be of any value to him, it was necessary that it should give him the privilege of purchasing a good marketable title to the land. Whatever the outcome of the litigation relative to the title to the land may be, it is certain that neither Crapo ·nor Smith, nor the other stockholders of the S. O. Company, nor the company itself, could give Kinney a valid option to purchase the land described or convey a good marketable title thereto. Under these circumstances, Kinney could not make a deal or sale so as to realize a profit. The agreement between Kinney and Eckenberger, the terms of which are very general, was, in effect, as explained by the evidence, an agreement to divide commissions or profits on the contemplated deal. Hoberg, with whom Eckenberger was to work in order to obtain an option on the land, had held an option on the land a short time prior thereto, and the matter was well understood by both.

Under the authority of *Roche* v. *Smith,* 176 Mass. 595 (58 N. E. 152, 79 Am. St. Rep. 345, 51 L. R. A. 511), and other like cases, it is urged by counsel for defendant that where a broker finds a person from whom the broker's principal desires to purchase property, and such principal makes a valid agreement with the persons produced by the broker, the latter has earned his commission, even if it turns out that the customer or seller cannot make a good title and the land is not conveyed, provided the broker acted in good faith in the transaction. The only difficulty with this proposition of law is in its application to the facts in the case at bar. For some reason, and apparently a wise one, Messrs. Crapo and Smith cautiously avoided executing a contract giving Kinney an option to purchase the land desired. They simply gave an option on the capital stock of the S. O. Company, or the

property, retaining to themselves the right to elect which should be transferred, and in the subsequent contracts with Kinney extending the time of the option it was plainly provided that the shares of stock were all they proposed to sell. As to the contracts between Kinney, Crapo and Smith, the first and third were plainly option agreements. While the second recites that the time for making payment is extended and somewhat indicates that Kinney had elected to purchase the property, we think the effect of the contract was simply to extend the time of the option contract, by extending the time of the payment. This conclusion is confirmed by the language of the third agreement, which purports to continue the former stipulations in force and does not appear to be of any more or less scope than those. This third contract is certainly no more than an option, and recites that Kinney had forfeited his right to purchase the shares of stock. The most that appears from the whole transaction is an intention to purchase a portion of the shares of the stock. Therefore Kinney, the principal, never made a valid agreement to purchase the property referred to in his contract with Eckenberger, and the latter, the broker, never earned his stipulated commission.

3. The word "purchase," as used in the written agreement between the plaintiff and the defendant, is unqualified by the context, and means, as there used, the acquisition of title or interest in property, an executed and not an executory contract: 4 Kent (14 ed.), 441; 23 Am. & Eng. Ency. Law (2 ed.), 462; *Hessell* v. *Johnson,* 70 Wis. 538, 539 (36 N. W. 417). An option to buy on condition of making specified payments at specified dates is not an actual purchase nor an executed contract of purchase; *Darr* v. *Mum-*

*mert,* 57 Neb. 378 (17 N. W. 767) ; *Heimberger* v. *Rudd,* 30 S. D. 289 (138 N. W. 374, 377) ; *Dwyer* v. *Raborn,* 6 Wash. 213 (33 Pac. 350). A marketable title in fee simple to property desired to be purchased by a principal is necessary in order to sustain a claim for commissions by a broker when the purchaser has not entered into a binding contract to purchase with the seller: *Beach* v. *Steele,* 12 N. H. 82; *Lockwood* v. *Halsey,* 41 Kan. 166 ( 21 Pac. 98). At the time of the contract in suit, both parties thereto believed, as did people in general, that the S. O. Company had a good title to the 95,345.12 acres of land, the main part of the timber tract for which plaintiff was anxious to negotiate. There was a mutual mistake made by the parties as to the subject matter of the contract of March 1, 1902. There was in reality no meeting of the minds of the parties in regard to the property as it really existed. It would be unjust and inequitable to permit the defendant to enforce the contract and compel the plaintiff to pay commissions for assisting to do a thing that was impossible. The circumstances under which the agreement was made and the object in view must be considered in giving meaning to the ambiguous terms. The plaintiff should be relieved from the obligation of the contract, and the same should be canceled: *Nordyke & M. Co.* v. *Kehlor,* 155 Mo. 643 (78 Am. St. Rep. 600, 607, 56 S. W. 287.

It is said in 20 Am. & Eng. Ency. Law, page 812:

"Contracts are daily made upon the assumption of certain facts, and the parties give their assent, not absolutely, but upon the implied condition that the reality conforms to the assumption. If it should prove otherwise, the condition is broken and equity relieves from the apparent agreement because there is no real assent."

At page 813 of the same work it is said:

"The existence of a subject matter being essential to every contract, it follows that the mistake of the parties in supposing something to exist which does not exist invalidates any contract in respect thereto, except, of course, where the uncertainty of the existence of the thing is the very essence of the agreement. Thus, if after an agreement for the collection of a claim it appears that the claim had been allowed before the contract was made, or if, after a contract for the sale of real property, it turns out that by the operation of some settled principle of law of which both parties were alike ignorant the party who contracted to sell had in fact no title to the land. * * In all these cases the contract is voidable."

At page 818, *supra,* we read:

"A mistake of fact is no less such for having been induced by a mistake of law, * * and equity will relieve against a mistake in respect thereto as against other mistakes of fact."

In so far as the contract between the plaintiff and the defendant bears thereon at the time of the making thereof, all the property of the S. O. Company might as well have been washed away or destroyed by an earthquake. It would then have been just as properly a subject matter of the contract as it was under the conditions shown in the record.

The equities are with the plaintiff. The decree of the lower court is therefore affirmed.        AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE BENSON, concur.