S. W. REYNOR, Appellee, v. A. D. MACKRILL, Appellant.

**BROKERS:**    Compensation—Performance of Contract.    Recovery of
1    commissions may not be defeated on the plea that the owner was not specifically notified that the agent had secured a cus-

tomer, when what was done substantially amounted to the giving of such notice.

BROKERS:     Compensation—Bad-Faith Refusal to Make Sale.  Manifestly, a broker may not be defeated in his action for commissions by the fact that the owner, in order to defeat such commission, refused to make a sale to the broker's customer, but later did so on the unfounded claim that the agent was not instrumental therein.

BROKERS:     Compensation—Performance of Contract —''Able'' to Buy.  To be "able" to make a purchase means that one must actually have the cash necessary to make the cash payment, and not merely the property on which he could raise it.

*Appeal from Jones District Court.*—F. O. ELLISON, Judge.

WEDNESDAY, OCTOBER 3, 1917.

SUIT for commission alleged to be due for complying with a written contract to obtain a purchaser for land, and securing a contract of sale.  The answer is that plaintiff made no sale; produced no buyer who ever bought, so as to meet the contract; that the one tendered did not have the means to buy; and that, after extensive negotiations and efforts to sell, this person tendered, a Mrs. Blankenburg, failed to buy, and the negotiations were abandoned; that, on account of all this, defendant was compelled to procure a loan on the land to meet a payment due, and compelled to lease the farm; that thereafter he himself sold the farm and deeded it to Mrs. Blankenburg, in which sale plaintiff in no manner assisted or aided, wherefore defendant is in no manner indebted to plaintiff.  Plaintiff had judgment upon verdict, and defendant appeals.—*Affirmed.*

*M. W. Herrick* and *B. E. Rhinehart,* for appellant.

*Remley & Remley,* for appellee.

SALINGER, J.—I.  Plaintiff wrote defendant that, if he wished plaintiff to try and sell, plaintiff would try for another month on terms previously talked, and, "If I can sell

the farm for $40 per acre, you will give me $500 for making the deal—I think I can sell the farm inside of five weeks for $40 an acre." Defendant answered:

"If you can sell that place at $40, please let me know and I will send contract. So please let me know."

As a witness, plaintiff testifies that defendant asked that plaintiff let him know if plaintiff got a purchaser, and defendant would send the contract.

A point is made of its being necessary,

1. BROKERS: compensation: performance of contract. both in law and under the contract, that the owner should be notified that the agent had a customer, and of the terms proposed by him, so that the owner might, if he elected, enter into a binding contract. If that be a requisite, it was met. The proposed buyer, Mrs. Blankenburg, and the owner and the agent met; the owner was advised that this woman was such purchaser; the terms were fully talked over; and the buyer advised the owner that she was there to close up. The jury could find that the owner agreed, and said, "All right, go down and draw up the contract;" that the buyer and seller directed what should be put into the contract; that work on writing up the contract was entered on; and that, while it was not finished, because the owner left to get an abstract, it was being written up while he was away for that purpose. This was on February 20th. Defendant says he stated that the agent had done nothing, and he (plaintiff) was there to sell in person, and that they were together to make a contract, if they could get together. The jury could find that the terms had been talked over in January, and agreed to on this February 20th, and the deal was to be completed at Davenport the next morning; that defendant said that, if plaintiff had sold the farm by the middle of January, he would have been in time. It could find that defendant complained of the delay, and at least

intimated that this delay had greatly inconvenienced him, that he said the contract had expired long ago, and that he would not go ahead with a new deal unless he got more than the original terms. Plaintiff conceded that the contract time had expired.

It is questionable whether the answer raises the issue of want of notice. Be that as it may, the expiration of the contract time and failure to give notice must not be confused with the claim that the agency was at an end when plaintiff acted. Assume that defendant was justified in not dealing because the contract time had expired, that does not make the position tenable that there is no liability because there was a failure to give notice to the owner. Whatever other defenses defendant may have, failure to notify, where everything the notice could accomplish was effected without the giving of such notice, is not a tenable defense. The citations which plaintiff presents in support of her position are: *Beamer v. Stuber,* 164 Iowa 309, at 312. It holds:

"It is not enough that a parol offer to buy be made to the agent. The proposition should be to the principal, to the end that the statute of frauds may be obviated by reducing the agreement to writing. * * * This does not necessarily mean that the offer shall be made by the purchaser to the seller, but that it shall be made in such circumstances that the latter may then exact the execution of a binding contract if he so elects. There is no reason why the agent of the seller may not communicate to him an offer of purchase, and, if the proposed purchaser is immediately accessible, so that a written contract then and there may be executed, and he is ready, willing, and able to consummate the deal, this is enough."

This opposes rather than supports appellant.

*McDermott v. Mahoney,* 139 Iowa 292, gives no support, nor *McGinn v. Garber,* 125 Iowa 533. *Flynn v. Jordal,* 124

Iowa 457, decides that an agent, to earn his commission for services in finding a purchaser of land where the sale is not consummated, must procure a valid obligation to buy and tender it to the vendor, or bring the parties together so that the sale may be made if the vendor elect, and that there is the right to withdraw an offer befo' it is accepted, but, if the proposed buyer takes his money from the bank, and advises, upon acceptance, that he has given up taking the land, or, in the absence of such advice, a reasonable time has elapsed wherein to accept, the contract binds neither party, and there can be no recovery unless it was made to appear that the proposed buyer was ready, willing and able, when the contract was tendered.

*Dean v. Goodrich,* 160 Iowa 98, gives no support; so of *Hill v. Dakin,* 162 Iowa 103. Both but hold that the contract made must be performed. And all that *Osborne v. Dannatt,* 167 Iowa 615, decides is that, where a petition based on a commission contract which provides for sale within a specified time, fails to plead performance within that time, and sets up no facts to avoid such provision, it is demurrable.

The point to *Felts v. Butcher,* 93 Iowa 414, is that the petition declares upon a sale made, whereupon commission may not be recovered merely for negotiations for a sale, and that the only contract made was one that neither buyer nor seller could enforce.

II. Since the time fixed for the duration of the contract had expired on February 20th, the defendant was at liberty to refuse the sale his agent tendered. He saw fit to go on, as though the contract time had not elapsed. If waiver is involved, none was pleaded. But there was no objection to testimony addressed to showing that the negotiations went on as if they were being conducted during the life of the contract. It therefore becomes a material ques-

tion why no sale was effected. On this head, the jury could find that a sale and its terms were fully agreed to; that defendant refused to consummate it, either because he objected to paying the agreed commission, or because of some act or omission on his part which was unjustified.

The jury could find that failure of defendant to furnish abstract caused some delay; that the buyer wanted one at once, so that it might be examined at once; that defendant said it was out on a farm with one Milan; that defendant and plaintiff went at once to get it; that Milan told them it was at his sister's; that defendant told the proposed buyer that he would send the abstract right down; that it was arranged it should be brought to Onslow the next day, or sent by mail to that place; that, on the next morning, defendant told the customer there was a slight flaw in the abstract; that it would take some time to correct it; that he could probably deliver it in two or three weeks; that the buyer waited two weeks, and then telegraphed to South Dakota for the abstract, got it later, and then turned it over to her attorneys. The jury could find that there was to be $500 paid down, and the balance on March 1st, or as soon as the abstract could be brought down to date, and that the customer had a certified check for $500 ready whenever a merchantable title was shown by the abstract. It appears that defendant had need of his money by March 1st, that plaintiff knew this, and that the buyer was in need of closing by March 1st.

We are told that while, as a general rule, the commission is earned as soon as a buyer who is able and willing to buy on the terms proposed is tendered, this is not so if the sale fails through some fault of the buyer. The support claimed is *Rounds v. Alee*, 116 Iowa 345. But the proposition would seem to need no support. The difficulty is that the proposition is sound, but does not determine the controversy we have for settlement.

III. The owner later sold the land to
the same person who was the proposed buy-
er at the time when the negotiations were
abortive. The jury could find that this sale
was a mere subterfuge and, in fact, brought about because
of what the agent had done. This suffices, though the ver-
dict might not have been disturbed had it been found, in-
stead, that the sale was utterly independent of anything
done by the agent, and that therefore no commission was
due him.

2. BROKERS:
compensation:
bad-faith re-
fusal to make
sale.

IV. Mrs. Blankenburg said, over objection, that she
was able to pay over the price and always was ready, had
made arrangements to pay for the land when she agreed to
buy; that the money was ready for her, was at her com-
mand; that she always looked out so that, if she had to pay
cash, she knew where she could get the money, and it was
ready for this deal,—she was able to pay the full amount
on February 20th; and she states how arrangement therefor
was effected. It may be conceded that this is somewhat
shaken by cross-examination and counter testimony. But
enough remains to make her ability a fair jury question.
There is ample testimony to sustain a verdict finding that
she was willing to buy.

V. It is urged that the court should
have instructed as to what constitutes a
ready, able and willing buyer, and the defi-
nition should have been that he is one who
actually had the money to meet the cash payment, and not
merely one who might have property upon which he could
raise the necessary money. The support claimed is *Jones
v. Ford,* 154 Iowa 349, at 554. The court charged correctly
that:

3. BROKERS:
compensation:
performance
of contract:
"able" to buy.

"To be able means that the purchaser must have the
money at the time to make any cash payments that are re-

quired in order to meet the terms of the seller, and does not simply mean that the purchaser have property upon which he could raise the amount of money necessary, but, as stated, he must actually have the money to meet the cash payment and be in shape financially to meet any deferred payments."

It charged correctly that to be willing "means to be willing to make the purchase upon such terms." This, as said, is correct, though it is held in *McGinn v. Garber*, 125 Iowa 533, at 535, that, though there be general testimony that the money to make the cash payment was on hand, if it does not appear that the buyer owns property out of which a judgment for the purchase price can be enforced, there is a failure of proof as to sufficient financial ability. But, in *McDermott v. Mahoney*, 139 Iowa 292, at 306, where a proposed buyer testified generally that he was able to buy, that he could within a day or two have raised the money to make the necessary cash payment if the owner had not refused to sell, and it appears that there was issue on performing by a specified time, and, at the time at which the ability was questioned, the agent still had ten days to perform, it is held that in these circumstances neither immediate ability nor tender nor actual possession of enough cash to tender, or readiness to tender, is material.

VI. The abstract proposition that it is error and presumptively prejudicial to instruct on an issue upon which there is no evidence, and that instructions should not be based on a theory not presented by plea or proof, is not to be doubted, and we give the citations in support no investigation. The difficulty is that here it is no more than an abstract proposition. So of the proposition that, where the contract of sale is to be approved by the owner, finding a buyer is not enough, and "the principal may refuse to carry out the sale." And so of the statement that one may not recover on contract unless he shows that he has per-

formed in accordance with its conditions.

We find no prejudicial error, and the judgment below must be—*Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.