DAVID W. JONES, Appellant, v. H. L. BUCK, Appellee.

**Agency:** COMMISSION CONTRACT: EVIDENCE. In this action to recover
1 commission for the sale of real estate, the evidence is reviewed and held insufficient to establish the contract sued upon for a stated commission.

**Same:** ESTOPPEL. Where a real estate agent, as in this case, consented
2 to an abandonment of the sale he had been negotiating and returned to the proposed purchaser his deposit of earnest money, the agent was thus estopped from claiming a commission, unless as contended he fulfilled the conditions on which he then secured the right to an extension of the time for making the sale for the purpose of securing a loan for the purchaser, thus to enable him to complete the purchase; but the evidence fails to establish compliance with the extension agreement.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

Saturday, May 14, 1910.

Action at law to recover commission for the sale of real estate. There was a directed verdict and judgment for the defendant, and plaintiff appeals. *Affirmed.*

*W. R. Hart* and *W. J. Baldwin,* for appellant.

*Ranck & Bradley,* for appellee.

Per Curiam.—Plaintiff alleges that he entered into an express oral contract with defendant, whereby he undertook to furnish a purchaser for defendant's farm, for which service he was to receive compensation at the rate of $1 per acre of land sold. The defendant denies the claim stated in the petition, and denies that plaintiff found or furnished a purchaser for his land. There is but little real conflict in the testimony as to most of the material facts. The defendant owned a farm in Johnson County, but at the time in question had gone away, leaving his business interests there to the oversight of his brother, E. O. Buck. There had been some sort of understanding between plaintiff and defendant, by which, if the plaintiff produced a purchaser to whom defendant could make satisfactory terms of sale, plaintiff should receive a commission. Plaintiff understood, however, that defendant wished to get at least $60 an acre or any aggregate price of about $13,000, and to have a cash payment thereon of $6,000 or $7,000. About December 9, 1907, defendant visited Johnson County, and had an interview with plaintiff, who says defendant then "told me we had a prospective purchaser in the western part of the state, and wanted me to withdraw it off the market." Later he says defendant came in again and authorized him to renew his efforts to make a sale, and agreed to pay a commission of $1 per acre. Thereafter plaintiff sought to make a sale to one Leeny, who

offered to purchase at $60 per acre, paying $3,000 down and $10,000 in deferred payments secured by a mortgage on the land. Plaintiff accepted the offer on condition of its approval by defendant, and received from Leeny a check for $200 to apply on the cash payment, giving a receipt therefor, and agreeing to return it if the sale was not consummated. He then telegraphed the offer to defendant, who answered by letter, objecting to the cash advanced of $200 as insufficient, and telling plaintiff he would not pay a dollar an acre for commission upon a sale at $60 per acre. The letter closed with a direction to plaintiff to see E. O. Buck, and that any agreement made with him would be all right. A writing was thereafter made and signed between Leeny and E. O. Buck as agent for his brother, but, as printed in the abstract, it is so incomplete and confused in form and substance as to be quite unintelligible except as the same is supplemented by the oral testimony. It is the testimony of Leeny, who was called as a witness for plaintiff, that as an inducement to the purchaser plaintiff agreed to procure for him a loan of $7,000 on the land to enable him to meet the terms of the contract, and, while plaintiff does not admit that this was a condition of the deal, he concedes that he did undertake to assist in the matter. At any event, it developed that the loan was not procured, and Leeny finally refused to go further. The three persons, plaintiff, E. O. Buck, and Leeny, then met, and, Leeny demanding that the deal be abandoned, the written contract was surrendered, and, while plaintiff was reluctant to consent, he finally did so, and returned the check which he had received as the advance payment. This being done, he complained that he had not been given a fair chance to procure the money for Leeny, and it was then agreed that, if he should succeed in obtaining the promised loan of $7,000 by noon of the following Saturday, Leeny would still take the land. At the expiration of the stipulated

time plaintiff claimed to have found the money. It appears according to his own statement that he had found one person who would lend $6,500 on the land and another who would lend Leeny the further sum of $500 on his promissory note with approved security, and this he insists was such a fulfillment of the agreement as to entitle him to his commission. Leeny declined to proceed on those terms, and the sale was abandoned. It appears, however, though indirectly, that at a later date defendant finally sold the land to Leeny, but on terms materially different than was contemplated in the prior negotiations. From this it is further argued by plaintiff that he is entitled to a commission notwithstanding the abandonment of the first deal. But there are insuperable objections to any recovery in this case.

In the first place, plaintiff's petition states no claim upon a *quantum meruit,* but plants his case solely upon an alleged express contract for a commission of one dollar per acre for procuring a purchaser, and, if there was no evidence of such a contract on which he was entitled to go to the jury, then there was no error in directing a verdict against him. *Hunt v. Tuttle,* 125 Iowa, 676. And this, as we read the record, is precisely the condition of the case now before us. True, plaintiff swears that in his last personal interview with defendant it was agreed between them that, if he succeeded in finding a purchaser satisfactory to the defendant, the latter would pay a commission of $1 per acre. But according to his own showing, when he reported the proposed sale, defendant at once responded, rejecting the offer and notifying plaintiff that he would not pay the commission upon a sale at $60 per acre. Here, then, was a distinct termination of the contract as to $1 per acre commission, so far at least as any sale of $60 per acre is concerned, and, unless there be evidence of some express or implied renewal thereof, there can be no recovery herein. He testifies explicitly that there was

no subsequent agreement on the subject with the defendant or with E. O. Buck, his agent. He says, "I made no contract with Ed. I do not claim that his brother Ed made any contract to give me a dollar per acre"—and, so far as the record shows, he never had any further direct communication with the defendant after the receipt of the letter refusing to ratify a sale on that basis. There was therefore a palpable failure of proof of the contract sued upon, and this alone is sufficient to require an affirmance of the judgment.

It may also be said that, when plaintiff consented to the abandonment of the sale which he had been negotiating and returned the deposit of earnest money, he estopped himself from claiming any commission for his service unless he fulfilled the condition on which he secured the privilege of time until the following Saturday to secure a loan on the land for Leeny, and thus enable him to complete the purchase. This he did not do. The promise of one person to make a loan of $6,500 on the land and of another to furnish $500 on personal security was not a substantial compliance with the condition. Nor is there any evidence whatever that the abandonment of the deal by Leeny and defendant was designed to defraud the plaintiff.

There is no reversible error in the record, and the judgment of the district court is *affirmed*.

Evans, J., taking no part. Deemer, C. J., dissenting.