S. H. WAREHAM, Appellant, v. FLOYD ATKINSON and IDA ATKINSON, Appellees.

No. 41776.

MARCH 14, 1933.

Lovrien & Rader, for appellant.

Geo. A. Heald, Jr., for appellees.

ANDERSON, J.—In August, 1932, the plaintiff appellant filed his petition in the district court of Clay county against the defendants, appellees, in which he states that about the year 1930 the defendants engaged the plaintiff to find for them a purchaser for a certain dwelling house in the town of Peterson, Iowa, at the price of $8,000, and that, pursuant to such request, the plaintiff did find and bring to the defendants a purchaser ready, willing, and able to buy said property, and that said purchaser so found did, in fact, purchase said property at the price of $8,500, and plaintiff claims a commission of 2½ per cent of such purchase price as the reasonable and fair commission for his services so rendered and performed.

The defendants deny generally the plaintiff's petition, and allege that at all times mentioned the plaintiff was acting as agent for one M. C. Remington, the party who was attempting to buy the defendants' house in Peterson, Iowa; that he was employed by the said Remington for a consideration; and that the said Remington was the party who eventually bought the said property.

The defendants' answer in another division thereof contained the statement that, if plaintiff was, at one time, the defendants' agent, and did attempt to negotiate a sale of the defendants' property to the said Remington, such deal was abandoned, and that some time later the said Remington and the defendants entered into negotiations which resulted in the sale of the property at and for the sum of $8,500. This part of the answer was stricken by the court upon motion of the plaintiff.

The evidence, which is very brief, shows that the plaintiff was a resident of the town of Peterson, Iowa, and engaged in the real estate business during the time involved, and that plaintiff had a conversation with Floyd Atkinson, one of the defendants and a joint owner of the real estate involved, and Floyd told the plaintiff that they wanted to sell the house in Peterson. Plaintiff told him it

would be hard to make a sale of a house like that in a little town like Peterson. Floyd said they would take $8,000 for it. Plaintiff told him he would attempt to find a purchaser, and, if he could find anything, he would let Floyd know. Floyd said, if plaintiff could find anything, he would take care of the plaintiff. No definite contract was made, but Floyd said to the plaintiff, "I will take care of you on the commission." Later, Mr. Remington asked the plaintiff where he could buy a house, and plaintiff advised him that he could buy the Atkinson house and told him what they asked for it. Remington then said, "I will look it over, and if you will get it for $8,000.00 I will help pay a little commission." Plaintiff advised Floyd Atkinson of his negotiations with Remington and Floyd said, "Go ahead," that he was very anxious to sell it. Later the plaintiff got Mrs. Atkinson, who owned an interest in the house, and Mr. Remington together and took them down and showed Remington the house. A few days later Remington told plaintiff he would take the house at $8,000, and both Mrs. Atkinson and Floyd were informed of that fact by plaintiff. A few days later Mrs. Atkinson said she would not sell at $8,000, but that she thought she would take $9,000. Plaintiff told Remington of this statement, and asked him if he could raise his bid any to let plaintiff know. Plaintiff had told Mrs. Atkinson a day or so before they looked at the house that plaintiff was pricing it at $8,000. Later Mr. Remington told plaintiff that he would pay no part of the commission on account of the raise in price, and plaintiff communicated this fact to Floyd Atkinson over the telephone, and also told Floyd that Remington would pay $8,500. Plaintiff also testified that, at the time he had the first talk with Mrs. Atkinson, he told her about Floyd having listed the property with him for sale at $8,000, and she made no objection thereto, and that she went with him and Remington to look over the house after she had been told of the listing of the property for sale. A week or ten days later Remington purchased the house at $8,500. Plaintiff also testified that he told Floyd Atkinson that Remington would contribute something toward the commission if he purchased the house.

Testimony also shows that 2½ per cent on the sale price would be fair and reasonable compensation or commission of a real estate agent in finding a purchaser for the real estate in question.

The plaintiff was the only witness in his behalf, and the foregoing is practically all of the testimony offered in the case.

At the close of the testimony, the defendants moved for a directed verdict "because the undisputed evidence shows that the plaintiff was employed by a third party—the buyer of the property in question, and was acting as agent for the said buyer and for that reason is not entitled to recover anything in this action." The court sustained the motion, and in ruling thereon said:

"I feel very confident in saying that the evidence now in the record fails to establish the contract, the liability as pleaded. * * * Then there is the further fact that had been discussed as to the double agency. I am not basing my ruling on this motion upon that question."

The errors relied upon by the appellant for reversal are that the court erred in sustaining the motion to direct a verdict, and based such ruling upon grounds not contained in the motion, and for the further reason that the grounds upon which the court based its ruling were not true and not supported by the record.

It is apparent from the ruling on the motion to direct that the court did not base such ruling upon the motion to direct as made by the defendants, but based such ruling on the thought that there was no showing that Floyd was the agent of Ida Atkinson, or had any authority to make a contract binding upon her, and that there was no sufficient showing in the record that the purported purchaser was at any time ready, able, and willing to purchase the property and pay cash therefor. It is evident that the court overruled the motion to direct as made by the appellees, and in directing a verdict for the defendants based it upon grounds not included in the motion. As to whether or not the court had authority to do this, we do not decide, and it is not necessary to decide such question in the view we take of the record.

Taking the testimony of the plaintiff as true, as we must in passing upon a motion to direct a verdict, we find that he was a licensed real estate broker engaged in the business at Peterson, Iowa; that Floyd Atkinson listed the property in question with him for sale; that the property was jointly owned by Floyd and Ida Atkinson; that Ida was informed of the listing and knew that the plaintiff was proceeding to find a purchaser; that she assisted in showing the property to the purchaser found by the plaintiff; that Ida knew of the price quoted to the plaintiff by her codefendant, Floyd; that she did not object to the listing contract or the price quoted until

the prospective purchaser offered to purchase at the price quoted; that the purchaser, so found and produced by the plaintiff, did purchase the property at and for the price of $8,500; that the plaintiff advised Floyd that, if the property was sold to Remington, the purchaser, at $8,000, he (the purchaser) would pay a part of the broker's commission; and that, after the defendants refused to sell at the price originally quoted, this plaintiff again advised Floyd that the purchaser would pay no part of the commission at a price greater than $8,000.

The defendants knew that they were dealing with a real estate agent and with a customer produced by such agent. And with such knowledge they proceeded to close the deal and make the sale to such customer. It does not matter whether the record fails to show that the purchaser was able to pay cash for the property or not, as it is evident that he purchased the property upon terms satisfactory to the sellers. The deviation in price was made at the defendants' instance, and whether or not the sale was made for cash would make no difference as long as the terms, whatever they were, were satisfactory to the sellers. The duty of the agent is performed when he finds and introduces to his principal a person who is ready, able, and willing to buy on the terms proposed by or acceptable to his principal. Beamer v. Stuber, 164 Iowa 309, 145 N. W. 936; Johnson Bros. v. Wright, 124 Iowa 61, 99 N. W. 103.

It is well settled that, if the contract is to find a purchaser ready, willing, and able to buy on terms satisfactory to the seller, the compensation or commission is earned when such a purchaser is produced. Jones v. Ford, 154 Iowa 549, 134 N. W. 569, 38 L. R. A. (N. S.) 777.

In the instant case it was necessary for the plaintiff to prove: (1) The contract upon which he bases his right to a commission; (2) that he produced a purchaser who was ready, willing, and able to purchase on terms satisfactory to the defendants; (3) that the purchaser was induced to enter into the negotiations and to make the purchase through the efforts of the plaintiff as agent; in other words, that the plaintiff was the efficient moving cause of the sale; and (4) that there was an implied contract to pay commission or compensation for his services.

We think that there was sufficient evidence in the record to take this case to the jury upon the propositions stated, and we are also of the opinion, under this record, that the question as to dual agency

was also a question for the jury. The latter was an affirmative defense, and the burden of proving it was upon the defendants.

It follows from what we have said that the court was in error in directing a verdict for the defendants, and such ruling is accordingly reversed.—Reversed.

KINDIG, C. J., and ALBERT, STEVENS, MITCHELL, and KINTZINGER, JJ., concur.