LEE KELLOGG, Appellant, v. B. J. RHODES, Appellee.

No. 45972.

June 16, 1942.

O. H. Allbee, for appellant.

Joe B. Tye, for appellee.

Garfield, J.— The petition alleged that appellee orally agreed to pay V. C. Peterson Company a commission to find a purchaser for his farm, upon terms stated by appellee; that said company secured Milo Edwards as such purchaser and performed all conditions of the oral agreement; that the services are of the reasonable value of $840, the claim for which was assigned to appellant. The answer was a general denial. Following trial to the court without a jury there was a judgment for appellee. Appellant's motions for judgment notwithstanding the verdict and for new trial were overruled. Appellant's principal claim to a reversal is, in effect, that under the undisputed evidence he was entitled to recover.

The decision of the lower court has the effect of a jury verdict and will not be disturbed by us if supported by substantial evidence. Furthermore, we must consider the evidence in the light most favorable to appellee. Wormhoudt Lbr. Co. v. Union

Bk. & Tr. Co., 231 Iowa 928, 932, 2 N. W. 2d 267, 270; Tilden v. Zanias, 228 Iowa 708, 709, 292 N. W. 835.

The burden of proof rested upon appellant. In the absence of an admission by the opposite party, it is seldom that a party having the burden establishes his claim as a matter of law. Low v. Ford Hopkins Co., 231 Iowa 251, 254, 1 N. W. 2d 95, 97.

The evidence shows that V. C. Peterson Company operates a real estate brokerage in Marshalltown. It employed appellant as a broker and salesman. Appellee is also a real-estate broker living in Marshalltown. Early in July 1940, Milo Edwards, who later bought the farm in question, came to the Peterson office as a prospective purchaser. At that time Peterson Company did not have the farm in question listed for sale. Appellant testified that about August 1, 1940, he telephoned appellee that he had prospects who were looking for such a farm as appellee's 240 acres in Grundy county, and asked if he would like to sell the farm; that appellee "said he would consider sale of the farm. He said he wanted $155.00 an acre. I asked him 'Will you pay a commission to us?' He said, 'yes'."

One evening about the third week in August appellant Kellogg, Edwards (the purchaser) and wife, and appellee and wife, talked about the farm at appellee's home for about an hour. On August 26th, appellee came to the Peterson office and appellant then drove appellee in the former's car to the Edwards farm, where they got Edwards and drove him to appellee's farm. The three walked over the land and discussed the farm. On this occasion, Edwards asked if appellee would consider $140 an acre for the farm. Appellee replied, "That isn't enough. It's worth $150.00." Appellant testified that Edwards made a definite offer of $33,000, or $137.50 per acre. Edwards' testimony was that he said he might consider buying for $33,000. At the conclusion of this talk, appellee agreed to confer with his wife, who had an interest in the farm, as to whether they would accept $140 an acre.

That same evening appellee telephoned appellant, "The deal is off and I will have to have $150.00 an acre * * *." Appellant testified that he responded, "I'll see what I can do about it," to which appellee replied, "All right." Appellee testified that appellant merely replied, "O.K."

On August 28th, appellant wrote Edwards a letter signed by the Peterson Company, sending appellee a copy, in which appellant stated that appellee would not consider a sale at less than $150 (per acre); that "the best thing to do would be to drop the negotiation at once" and let appellant find Edwards another suitable farm that would be less expensive. The letter also stated: "However, should you and Mr. Rhodes resume negotiations for sale at any future time on this or any other basis it is understood by all parties that it will be done through the V. C. Peterson Company." The letter assured Edwards appellant would aid him in finding a suitable farm, and described and recommended another farm "which should be purchased at $100" (per acre).

On September 15, 1940, appellee caused to be published the following advertisement in the Des Moines Sunday Register:

"Iowa—80 acres, or 240, Grundy Co.—iowa's best soil. All Tillable. No Erosion. Tiled. 80 has Good Buildings; Fences; Highways; Abundant Soft Water; Elect. Low Taxes. Good imps., low taxes. Good Terms. B. J. Rhodes, owner, Marshalltown, Iowa."

The next evening after Edwards read the ad in the Register he went to see appellee and agreed to buy the farm for $140 an acre. The sale was completed in an attorney's office later. Aside from the above-mentioned letter of August 28th, neither appellee, appellant, nor anyone else for the Peterson Company communicated with Edwards between the talk of August 26th and the talk in which the sale of the farm was agreed upon. Appellee testified more than once, in effect, that he had no idea the Peterson Company would claim a commission if he sold to Edwards.

Appellant cites Tilden v. Zanias, 228 Iowa 708, 292 N. W. 835; Warcham v. Atkinson, 215 Iowa 1096, 247 N. W. 534, and other decisions holding that the agent's duty is performed when he finds and introduces to his principal a person who is ready, willing, and able to buy on the terms proposed by or acceptable to his principal. The main decision upon which appellee relies is Donahoe v. Denman, 223 Iowa 1273, 275 N. W. 154. However, none of the cases cited in the briefs quite reaches the situation presented by this record.

1344

■ The general rule is well settled that if property is listed at a certain price with a broker who is the procuring cause of a sale he is entitled to his commission, even though the sale is consummated by the principal and at a price lower than that quoted by him to the broker. 12 C. J. S. 197, section 86b; 8 Am. Jur. 1092, section 176; Annotation, 43 A. L. R. 1103, 1104, and citations; Annotation, 47 A. L. R. 855; Note, Ann. Cas. 1913E, 784; Note, Ann. Cas. 1914C, 138; Annotation, 139 Am. St. Rep. 225, 236. See Fisher v. Skidmore Land Co., 189 Iowa 833, 843, 179 N. W. 152.

There is an exception to the above rule where the agreement between broker and principal provides for the payment of a commission only upon obtaining a certain price for the property and the sale is consummated at a lower price. 12 C. J. S. 197, section 86b; 8 Am. Jur. 1101, 1102, section 190; Annotation, 43 A. L. R. 1103, 1111, 1112, and citations; Annotation, 139 Am. St. Rep. 225, 235; Sanden & Huso v. Ausenhus, 185 Iowa 389, 393, 168 N. W. 801.

■ It is also well settled that if negotiations between parties brought together by a broker are unproductive, and the parties in good faith withdraw therefrom and abandon the proposed sale, a subsequent renewal of negotiations followed by a sale by the principal at a lower price does not entitle the broker to a commission, since it cannot be said that he was the procuring cause of the sale. 8 Am. Jur. 1101, 1102, section 190; 12 C. J. S. 215, 217, section 93a; Annotation, 43 A. L. R. 1103, 1116, and citations; Annotation, 47 A. L. R. 855, 857; Note, Ann. Cas. 1913E, 784, 788, and citations. See Jones v. Buck, Iowa, 120 N. W. 112, Id., 147 Iowa 494, 126 N. W. 452.

By reason of the rule last mentioned we think the judgment for appellee has sufficient support in the evidence. The court could have found that negotiations were terminated and abandoned on the evening of August 26th; that appellee then stated, "the deal is off," to which appellant replied, "O.K."; that it was the newspaper ad which led the purchaser to resume negotiations resulting in the consummated sale; that appellant's efforts were not the efficient moving cause of the sale.

Many decisions dealing with similar fact situations emphasize that the good faith of the principal is an important considera-

tion. If the principal acts in bad faith in a fraudulent attempt to avoid paying a commission to the broker who is the moving cause of the sale, the principal is held liable. See Reynor v. Mackrill, 181 Iowa 210, 216, 164 N. W. 335, 1 A. L. R. 523. It cannot be said as a matter of law, however, that appellee so acted. See Sanden & Huso v. Ausenhus, 185 Iowa 389, 393, 168 N. W. 801.

Whether a broker is the procuring cause of a sale is ordinarily a fact question, frequently of some difficulty, for the jury to determine. 8 Am. Jur. 1087, 1088, section 172. The burden rested upon appellant to prove that his efforts were the efficient cause of the sale. 12 C. J. S. 262, section 111b; Wareham v. Atkinson, 215 Iowa 1096, 1100, 247 N. W. 534; Donahoe v. Denman, 223 Iowa 1273, 1277, 275 N. W. 154. We are not justified in holding that the evidence conclusively established the proposition.

█ Although the claimed insufficiency of the evidence to support the judgment is appellant's principal complaint, there are other assigned errors. Appellant contends the court erred in receiving in evidence the ad in the Des Moines Register which Edwards said he read and thereby again became interested in the farm. Appellant objected to the offer as immaterial. The argument is that the only defense was a general denial and the evidence had no pleading to support it. We doubt if appellant is entitled to urge this contention, because other testimony regarding the ad was received without objection. However, we think the point is without merit. The answer amounted to a denial that appellant's efforts were the procuring cause of the sale. It was proper for appellee to offer the newspaper ad and show that it led to the renewal of negotiations between purchaser and owner. The evidence tended to disprove appellant's contention that his efforts induced the sale. As having some bearing, see Craver v. Birmingham, 191 Iowa 512, 182 N. W. 787; Harris v. Moore, 134 Iowa 704, 112 N. W. 163; Tracy Land Co. v. Polk County Land & Loan Co., 131 Iowa 40, 107 N. W. 1029; Sawyer & Woodard v. Bowman, 91 Iowa 717, 718, 59 N. W. 27; Newton v. Ritchie, 75 Iowa 91, 93, 39 N. W. 209.

█ The court received in evidence, over appellant's objection of incompetent, irrelevant and immaterial, a farm catalogue issued by the Des Moines Register containing a copy of the above

newspaper ad. The catalogue was not published until after the sale to Edwards was consummated. The exhibit clearly should not have been received. However, the only portion of the catalogue having the slightest bearing on the case was a copy of the newspaper ad which was properly received in evidence. Appellant therefore suffered no prejudice by the admission of the catalogues. Independent Sch. Dist. v. Sass, 220 Iowa 1, 5, 261 N. W. 30; Powers v. Iowa Cent. Ry. Co., 157 Iowa 347, 349, 136 N. W. 1049; Silvers v. Floyd, 151 Iowa 415, 417, 131 N. W. 652.

 The court also received in evidence a written agreement between appellee and wife and one Brennecke, dated July 27, 1940, listing the farm in question for sale with Brennecke, until August 15, 1940, at $155 an acre and agreeing to pay a commission of 2 per cent. Appellant objected to the offer as incompetent, irrelevant, immaterial, and self-serving. We are at a loss to know on what theory this exhibit was offered or received. Appellant does not point out, however, how this exhibit could have been prejudicial to him. Conceding it should not have been admitted, we think the error insufficient to warrant a reversal.

Finally, appellant argues that the court erred in overruling his motions for judgment notwithstanding the verdict and for a new trial. The principal contentions here are that appellant was entitled to recover as a matter of law and that the verdict lacks the necessary support in the evidence. The contentions are disposed of by what we have already said. We are not permitted to review the evidence de novo and decide the case as we think proper.

 We believe appellant did not establish his right of recovery to such extent that he would have been entitled to a directed verdict if the trial had been to a jury, and that the judgment has substantial evidence to support it.—Affirmed.

All JUSTICES concur.