BEN MOORE, Appellant, v. HERBERT GRIFFITH et al., Appellees.

No. 46486.

JUNE 6, 1944.

George R. Ludeman, of Mason City, for appellant.

E. G. Dunn, of Mason City, for appellees.

MULRONEY, J.—This is an action wherein a real-estate broker sought his commission for the sale of a farm owned in part by the defendants. Since the trial court directed the verdict for the defendants at the close of all the testimony, on the grounds of its insufficiency to establish plaintiff's right to recover, we will first review the evidence tending to support the allegations of the petition.

Plaintiff is a licensed real-estate broker in Mason City, Iowa. A certain farm consisting of two hundred and eighty acres in Cerro Gordo County, Iowa, became the subject of a partition suit brought by two owners of undivided interests against the owners of the remaining interests. The plaintiffs in that action were represented by E. G. Dunn, an attorney in Mason City,

Iowa. Two of the defendants in the partition suit, Mable Whitwood of California and Herbert Griffith of Illinois, came to Mason City in the latter part of April 1943, and stopped at the Cerro Gordo Hotel. They contacted Grant McGowan, an old friend in Mason City, and inquired of him about real-estate agents with whom to list their farm for sale. They told him of the partition suit but that they had powers of attorney and they wanted to sell the land quickly so as to avoid the costs in the partition suit. Mr. McGowan gave them the names of two or three real-estate agents, among them being plaintiff's name, and suggested he would introduce them to plaintiff some evening, as the plaintiff lived at the Cerro Gordo Hotel. McGowan did introduce plaintiff to Herbert Griffith and Mable Whitwood in the lobby of the hotel and he was present when the oral agreement with Moore was made.

Moore's testimony as to this agreement appears in the record as follows:

"* * * the heirs had agreed to sell the farm for $112.50 an acre. They said they had authority to sell the farm for the others; that Griffith said he had a power of attorney from the heirs to sell the farm, and Mrs. Whitwood made some statement in regard to the same thing; they stated they had agreed among themselves in the sale of the farm. They wanted to know what the commission would be and plaintiff said others were charging a 5% commission, but his commission would be two and a half per cent; the defendants made no objection to that. They told plaintiff to go to work on it."

The agreement in its substantial details is corroborated by McGowan and the two defendants. Plaintiff knew it was not an exclusive listing and that the owners were also trying to sell the farm.

Plaintiff talked to several prospective buyers, among them being Fred Olson. He telephoned to Olson at his home and described the farm to him and called at Olson's office and went with Olson to see the farm. Together they went over one hundred sixty acres of the farm. Olson showed an interest in buying the one hundred sixty acres, as this joined another farm he owned. The plaintiff looked up the drainage tile on the farm at the

courthouse and "sketched it out" and showed it to Olson. Olson made an offer of $14,400 for the one hundred sixty, which plaintiff states he submitted to Mrs. Whitwood, but, as plaintiff testified, "* * * she said we got to sell the whole farm together." Plaintiff knew that Mrs. Whitwood was also trying to sell the farm and he testified she asked him who his prospect was and he said, "Mr. Olson, the Buick man," and she said "she would lay off of him."

Sometime later Mrs. Whitwood called McGowan and offered to sell the farm to him for $102.50 an acre. McGowan told Moore of this offer and Moore again saw Olson and told him of the offer Mrs. Whitwood had made to McGowan. Olson testified that after he learned of this lower offer to McGowan he called Mr. Dunn and asked him what the deal was on this farm. Dunn told him to come up to his office, which he did, and there he bought the farm for $102.50 an acre, closing the deal that day or the next day. Although Mrs. Whitwood stayed in Mason City during this period, Griffith went back to Illinois, but returned to close the sale to Olson when he received a letter from Mrs. Whitwood that a buyer by the name of Olson was going to buy the farm. The foregoing is a statement of facts as gleaned from the plaintiff's testimony, but there is really no serious dispute in any of the testimony except that Mrs. Whitwood denied that plaintiff had told her Olson was his prospective purchaser prior to the execution of the contract of sale to Olson, and Griffith testified he did not know that Olson was Moore's prospect prior to the execution of the sale contract. Moore met Griffith and Mrs. Whitwood in the hotel after the contract was signed, and when he told them he wanted to be paid, Griffith testified:

"We told him that inasmuch as he hadn't sold the farm we didn't feel the heirs of the estate would agree to pay him any commission."

I. We do not feel that under this record the court should have held the evidence insufficient as a matter of law. The contract with Moore is undisputed. Under such a contract Moore would be entitled to his commission if he produced a buyer for the farm that was satisfactory to the sellers. We held in Ware-

ham v. Atkinson, 215 Iowa 1096, 1100, 247 N. W. 534, 536, that the broker makes out a prima facie case when he shows:

"(1) The contract upon which he bases his right to a commission; (2) that he produced a purchaser who was ready, willing, and able to purchase on terms satisfactory to the defendants; (3) that the purchaser was induced to enter into the negotiations and to make the purchase through the efforts of the plaintiff as agent; in other words, that the plaintiff was the efficient moving cause of the sale; and (4) that there was an implied contract to pay commission or compensation for his services."

When we test the evidence in this case by the four elements of proof enumerated above, we feel that the question of the plaintiff's right of compensation was for the jury. As stated, the contract was admitted. The plaintiff's testimony and Olson's testimony would present a jury question on whether the plaintiff was the "efficient moving cause of the sale." Admittedly, he was the first person who contacted Olson and who solicited his interest as a purchaser. He it was who showed the farm to Olson, and it was his last talk with Olson that prompted the latter to call Mr. Dunn and go up to his office, where he purchased the farm. The ultimate sale to Olson establishes that the purchaser was satisfactory and the terms acceptable.

The trial court felt that the failure of plaintiff's evidence consisted in the failure of any proof that plaintiff had brought Olson and the sellers together. In its ruling on the motion, the court stated:

"Mr. Moore never brought his prospect in touch with these defendants. Never did, so the defendants couldn't make any contract with him. He must bring them together if he claims anything * * *."

But Moore had testified that Mrs. Whitwood knew that his customer was Olson. We said in the Wareham case, where the facts were very similar to this case [215 Iowa 1096, 1100, 247 N. W. 534, 536]:

"The defendants knew that they were dealing with a real estate agent and with a customer produced by such agent. And with such knowledge they proceeded to close the deal and make

the sale to such customer. * * * The duty of the agent is performed when he finds and introduces to his principal a person who is ready, able, and willing to buy on the terms proposed by or acceptable to his principal. Beamer v. Stuber, 164 Iowa 309, 145 N. W. 936; Johnson Bros. v. Wright, 124 Iowa 61, 99 N. W. 103.''

The broker's duty to introduce the prospective buyer to the seller does not mean that he must become the introducer who makes the parties personally acquainted. He has performed his duty if he introduces the buyer in the sense that he makes known to the seller that his customer is a prospective buyer. After that the seller cannot defeat the broker's right to the commission by closing the deal with the broker's customer and then asserting that the broker was not entitled to the commission because he did not sell the farm, unless, of course, there has been an abandonment of negotiations with this prospect. See Kellogg v. Rhodes, 231 Iowa 1340, 1344, 4 N. W. 2d 412, 414. In the case at bar there was evidence that Mrs. Whitwood knew of Moore's efforts to sell to Olson and that she said ''she would lay off of him.'' And the evidence showed that Griffith came back to close the deal on a letter from Mrs. Whitwood that Olson was the prospective purchaser. Although Mr. Dunn did not represent these defendant owners in the partition suit, there was evidence that these defendants first went to Mr. Dunn's office to learn the condition of the partition lawsuit and then started out to sell the farm ''to beat the division suit, to sell the property before the suit was put through.'' Olson could have learned of Mr. Dunn's connection from Moore, for the record shows that Mr. Dunn told Moore he was handling a partition suit on this property and both Mr. Griffith and Mrs. Whitwood told him there was a partition suit pending.

In Kellogg v. Rhodes, supra, we stated:

''The general rule is well settled that if property is listed at a certain price with a broker who is the procuring cause of a sale he is entitled to his commission, even though the sale is consummated by the principal and at a price lower than that quoted by him to the broker. * * * Whether a broker is the procuring

cause of a sale is ordinarily a fact question, frequently of some difficulty, for the jury to determine.'' (Citing cases.)

We think the trial court was in error in directing the verdict for the defendants. The plaintiff also complains of the trial court's ruling excluding evidence that plaintiff tried to help Olson arrange for financing to enable him to purchase the farm, and evidence that plaintiff told Mrs. Whitwood that Olson was his prospect, and that he pointed Olson out to her as his prospect. Such evidence should have been admitted. It might tend to show that plaintiff was the procuring cause of the sale and would serve to corroborate other testimony that defendants knew Olson was plaintiff's prospect.

The judgment of the trial court is reversed.—Reversed.

SMITH, C. J., and HALE, MILLER, WENNERSTRUM, GARFIELD, OLIVER, and MANTZ, JJ., concur.