ANTONIA WHITE, Appellant, v. W. C. GROVIER, Appellee.

No. 46782.

MARCH 5, 1946.

Thomas J. Bray, of Oskaloosa, for appellant.

R. G. Yoder, of Sigourney, for appellee.

WENNERSTRUM, J.— ■ Antonia White, wife of Harry F. White, is the assignee of her husband's claim against W. C. Grovier for money claimed to be due White as commission for

finding a purchaser of real estate owned by Grovier. The assignee brought the present action against Grovier and in her petition prayed for judgment against the defendant in the sum of $627.75, with interest and costs. The case was tried to the court without a jury and upon final submission plaintiff's petition and action were dismissed by the trial court and a judgment was entered against the plaintiff for costs. Thereafter a motion for a new trial and a motion for judgment notwithstanding the findings and decision of the trial court were filed. These motions were overruled by the court. Plaintiff has appealed from these rulings, the decision of the trial court, and the judgment as entered.

In the appellant's petition it is alleged that Harry F. White rendered services to the appellee in finding a purchaser for two hundred seventy-nine acres of land owned by him; that by reason of an oral agreement White was employed by appellee to find a purchaser at the price of $75 an acre and that the agreed compensation for White's services would be three per cent of the purchase price. The appellee admitted in his answer that he was the former owner of the real estate referred to in appellant's petition; that he orally listed the real estate with White for sale at $75 an acre, and that he orally agreed, if White was an efficient and procuring cause of a sale, he should receive a commission of three per cent of the sale price. The appellee in his answer specifically denies that White procured C. L. Rice as the eventual purchaser of the land involved in this action and that the appellee accepted Rice as a purchaser and consummated the sale of the land at a price of $75 per acre. He further denies in his answer that he is indebted to the assignor for the amount claimed in appellant's petition.

Inasmuch as our decision in this case is dependent upon the facts as disclosed by the record it is necessary that a summarization of the evidence as presented be briefly set forth.

Harry F. White, appellant's assignor, is a licensed real-estate broker in Iowa and has his office in Oskaloosa, Iowa. Grovier is a resident of Keokuk County, Iowa, in which county the land involved in this controversy is located. It is disclosed by the record that on or about July 8, 1943, the appel-

lant had a conversation with W. C. Grovier, the appellee, at Grovier's farm. At that time it is shown that Grovier stated that he wanted to sell the farm, that he placed a price of $75 an acre upon the land, and a commission of three per cent was agreed upon as commission if White made a sale. White testified that following this conversation he called on several of the neighbors living near the Grovier property seeking to interest them as prospective purchasers. It is shown that he called on C. L. Rice and also contacted him on several later occasions. It is shown that Rice first made an offer of $60, which offer was communicated to Grovier and at which time White advised Grovier that Rice was his customer.

One of the occasions when White conferred with C. L. Rice was in the town of Delta. In regard to this meeting White testified that Rice stated that he was waiting to make connections with his son, and that if his son wanted part of the farm, the son would take one hundred twenty acres of it and Rice would take one hundred sixty acres. Rice is further quoted as saying that he would let White know when he was ready to purchase the farm. It is White's further testimony that he communicated to Grovier the information that if a deal was made with C. L. Rice, Rice's son would take one hundred twenty acres. Grovier did not deny this testimony.

The record discloses that on August 21, 1943, a contract was entered into by the appellee, Grovier, and C. L. Rice and Quincy I. Rice, the son, for the purchase of the farm at $75 an acre. The contract provided for an initial payment of $2,-000, which payment was evidenced by the giving of a promissory note dated August 21, 1943, the date of the contract, and which note became due March 1, 1944, without interest. The contract further provided for a payment of $7,000 in cash on March 1, 1944, and the balance of $12,000 was to be carried by Grovier in the form of a mortgage for a period of five years, with interest at four per cent per annum. The contract contained a clause setting forth an agreement between the purchasers providing that Quincy I. Rice was to take one hundred twenty acres of the land east of the road and C. L. Rice one hundred sixty acres west of the road. The seller was not a party to this agreement for the division of the land between

the purchasers but he did recognize the agreement when he later made deeds of conveyance to the purchasers.

The trial court in its written findings of fact held (1) that C. L. Rice did not become the purchaser of the farm owned by appellee, as alleged in appellant's petition, in that he became a purchaser of only a portion of it, and (2) that Harry F. White, appellant's assignor, was not the efficient and procuring cause of the sale of the farm. The trial court in a statement of its conclusions of law held that the burden of proof was on the appellant to establish by a preponderance of the evidence that Harry F. White procured C. L. Rice as the purchaser of appellee's farm and that he did not meet this burden of proof by reason of the fact that C. L. Rice purchased only a portion of the farm and Quincy I. Rice had been the purchaser of the balance of the farm. The trial court further held that one of the allegations of appellant's petition was that White procured C. L. Rice as the purchaser for the farm and that the evidence does not support this allegation in the petition.

It is the contention of the appellant that the decision of the court is contrary to the undisputed evidence and consequently there should be a reversal.

I. This case was tried in the lower court without a jury and the decision of that court will not be disturbed if supported by substantial evidence. Kellogg v. Rhodes, 231 Iowa 1340, 1341, 4 N. W. 2d 412; Baker v. Palmer, 192 Iowa 1321, 1323, 186 N. W. 419; Dean & Son v. Goodrich, 160 Iowa 98, 104, 140 N. W. 435. It has been our further holding under circumstances similar to those presented in this case that we must consider the evidence in the light most favorable to the appellee. Tilden v. Zanias, 228 Iowa 708, 709, 292 N. W. 835.

The burden of proof rests upon the party alleging a contract of employment as a real-estate broker to show that he is entitled to a commission, and, in the absence of an admission by the opposite party, it is seldom that the party having the burden establishes his claim as a matter of law. Kellogg v. Rhodes, supra. In the instant case the appellee admitted in his pleadings that a commission contract was entered into but denied that White procured Rice as the purchaser of the farm.

Under the circumstances presented in this case this burden has been met.

■ II. It is alleged in the appellant's petition that Harry F. White secured C. L. Rice as the purchaser of the farm and that the appellee accepted said purchaser and consummated the sale of said land at the price of $75 per acre. It is the claim of the appellant that the trial court was in error in finding that C. L. Rice did not become the purchaser of appellee's farm, and it is his contention that its finding is not supported by sufficient evidence and is contrary to the testimony. A review of the evidence definitely shows that C. L. Rice acquired title to only a portion of appellee's farm but by the terms of the contract of sale first entered into he became obligated for the entire purchase price of the farm.

It should be kept in mind that the parties to the contract are, ''W. C. Grovier * * * party of the first part, and C. L. Rice and Quincy I. Rice * * * parties of the second part * * *.'' The part of the contract which refers to the division of the property purchased is as follows:

''It is understood and agreed *between parties of second part* that Quincy I. Rice is to purchase the east 120 acres of above described real estate to be settled for as follows: $3,000.00 March 1, 1944 in cash and balance of Six Thousand dollars to be carried in first mortgage on said East 120 acres for five years at four percent interest, balance farm to be settled for by C. L. Rice.'' (Italics supplied.)

It will be observed that W. C. Grovier is not a party to the agreement relative to the division of the land purchased. It should also be kept in mind that, as shown in the first part of the contract, C. L. Rice and Quincy I. Rice are unquestionably joint purchasers.

Inasmuch as this contract is a joint one, C. L. Rice is liable for carrying out the contract of purchase. Therefore, the statement made in the plaintiff's petition that White procured C. L. Rice as a purchaser of the farm is borne out by the provisions of the contract. The undisputed testimony shows C. L. Rice was White's prospect and that Grovier knew Rice was White's prospect before the contract of sale was entered

into. In fact, the evidence of Grovier and White would indicate that they felt White had some claim for a commission.

Rice testified that he did not get the commission but he admitted that the day after he made the deal with Grovier he went to White's office and offered him $100. Grovier testified he did not send Rice to White to offer him $100, but he stated:

"I knew he was going to see White. Mr. Rice said to me that if he bought the farm he was buying it direct, wouldn't pay any commission. I said, 'Mr. White has been down here three or four times, been around about it and I am going to pay him something.' And so well he said 'I will drop in this afternoon and settle for it.' I said 'All right, go ahead.' "

The requirements of a joint contract are commented upon in 12 Am. Jur. 814, 815, section 268, where it is stated:

"An obligation by, or a right given to, two or more persons is a joint obligation or right, and there should be distinct words of severance to produce a several responsibility or right.

"The general rule is that an obligation entered into by more than one person is presumed to be joint and that a several responsibility will not arise except by words of severance. In other words, an obligation undertaken by two is presumably joint in the absence of express words to render it several or joint and several or of a statute declaring every contract, though joint in its terms, to be several as well as joint."

And, from 12 Am. Jur. 816, section 270:

"It is an incident of every joint contract that all contractors are bound to its performance."

Further authorities to this same effect are found in 12 Am. Jur. 816, 817, and 17 C. J. S. 808, section 353. See, also, Code section 10975, 1939 Code of Iowa.

The trial court in its conclusions of law referred to the allegations of paragraph 3 of the petition that White had procured C. L. Rice as a purchaser and the appellee accepted said purchaser and consummated a sale of said land at $75 an acre. It was the trial court's conclusion that the evidence did not

support the allegations in paragraph 3 of the petition because C. L. Rice was not the sole purchaser. The pleading was amply supported by the undisputed testimony showing that White did procure C. L. Rice as a purchaser and showing that the appellee did consummate a sale for $75 an acre. True, he did not procure C. L. Rice as a sole purchaser, but the petition did not allege that the sale of the farm was to C. L. Rice alone and the appellee's answer admitted liability for the full commission if the said H. F. White was the efficient and procuring cause of sale.

As we will point out, White's right to a commission would exist if the sale was made to his prospect and another person secured by his prospect to assist him in the deal. The allegation in the petition in the case of Minks v. Clark, 70 Colo. 323, 201 P. 45, hereafter commented upon, was almost identical with the allegations of paragraph 3 of appellant's petition.

It is thus apparent that C. L. Rice, under the contract, the record in this case, the authorities cited, and the statute referred to, is liable for the entire purchase price of the land.

III. The trial court in its conclusions of law, in commenting upon the testimony, stated:

"H. F. White never advised the defendant that C. L. Rice and Quincy I. Rice were jointly interested in purchasing the farm in question."

The record shows that White advised Grovier that any sale of the farm to his prospective purchaser, C. L. Rice, would include Quincy I. Rice. It is shown that White interviewed C. L. Rice on several different occasions. On or about August 18, 1943, White went to the farm residence of C. L. Rice but did not find him there. As previously set forth, he then drove to the neighboring town of Delta, where he saw Rice and talked with him about the farm. White testified:

"I went to Delta and stopped at a cafe and Mr. Rice was there and I talked to him. He said he wasn't quite ready yet, was waiting to make connections with his son, if his son wanted part of the farm, if he bought it his son would take the 120 and he would take the 160."

As to this conversation Rice, in answer to an inquiry by White as to whether he was ready to buy the farm, testified as follows:

"He brought it up. I do not remember what he asked me. I told him I wouldn't be interested in the purchase of the farm unless the boy would decide to take part of it. I told him I wasn't interested in buying the farm unless the boy would be interested in it."

White further testified that after this conversation with Rice at Delta he "communicated to Mr. Grovier the fact that if I [White] made the deal with Mr. Rice his son [Quincy I. Rice] would take the 120." Grovier does not deny that White told him that if the farm was purchased by Rice he and his son would buy it together.

It was further shown that C. L. Rice, shortly after the time of the conversation at Delta, entered into and completed negotiations with Grovier for the purchase of the farm for $75 an acre.

It is to be noted that, under the undisputed testimony, this farm was sold on contract. It was sold on terms acceptable to the seller. It was sold to purchasers who agreed to pay the full purchase price at which Grovier listed it with White. It was sold, according to the contract, to C. L. Rice, who, under the undisputed testimony, was a buyer procured by White, and to Rice's son. Grovier was not a party to the special agreement in the contract whereby the son Quincy was to take the east one hundred twenty acres and C. L. Rice the west one hundred sixty acres. *This agreement was only between parties of the second part or C. L. Rice and Quincy I. Rice.* The execution and delivery of separate deeds on March 1st to the contract purchasers is not important. Insofar as the appellee seller was concerned, the farm was sold to C. L. Rice and Quincy I. Rice as joint purchasers. Under this undisputed record the appellee was clearly liable to White for the agreed commission of three per cent of the purchase price (Moore v. Griffith, 234 Iowa 1024, 14 N. W. 2d 644) unless as a matter of law a broker is not entitled to a commission where the sale is to his prospect and another.

We are cited to no authority holding that a sale to a broker's prospect and a joint purchaser precludes the broker from the right to a commission. This court, in Prusiner v. Holsberg, 159 Iowa 45, 48, 139 N. W. 913, 914, held exactly otherwise. In that case the contract with the broker was for the sale of a stock of merchandise. The broker's prospect was not financially able to purchase the stock but he secured his uncle, who gave him the necessary financial assistance. The sale was made to the prospect and the uncle jointly. In upholding the right of a broker to a commission, this court stated:

"This is not a case where a purchaser produced by an agent proves unable to buy on the terms proposed, and thereafter without the intervention of the agent a sale is made to a partnership or syndicate of which the proposed purchaser is a member, but is rather a case where both principal and agent know in advance the inability of the purchaser to complete the deal without assistance, and the negotiation is continued with the expectation or hope of his procuring the necessary assistance. This having been accomplished, the fact that the title passes to the person first proposed as a purchaser jointly with the third person, who supplies the needed cash or credit to perfect the purchase, makes it none the less a sale, accomplished through the effort or procurement of the agent, within the contemplation of the authority given him by the principal."

We feel that the present controversy is ruled by our decision in this last-cited case. In the case now before us there is undisputed evidence that the seller knew in advance that the prospect either could not or would not complete the deal without the assistance of another. When the seller completes the deal with a prospect and the person who assisted him as joint purchaser, it is a sale to purchasers procured by the agent.

The case of Minks v. Clark, supra, 70 Colo. 323, 324, 201 P. 45, 46, is quite like the instant one. There the complaint of the broker alleged that the defendant employed him to find a purchaser for the latter's property. The opinion discloses that the broker did thereafter find such a purchaser in the person of one H. A. Myers, that he bought only part of the property, and that he procured Mehaffey as a purchaser of the

386

remaining portion of the property. In speaking of the broker's right to a commission, the court stated:

"Assuming, without conceding or deciding, that plaintiff was employed only to find a purchaser for all of the property, this does not preclude plaintiff's right to compensation. He procured Myers as a purchaser for the greater part of the property and Myers in turn procured Mehaffey as a purchaser for the remaining portion of the property. The plaintiff was, therefore, the procuring cause of the two transactions, or of the sale of the entire property. This is equivalent to the plaintiff's procuring a purchaser of the whole of the property. It is immaterial that the plaintiff never saw, nor had any conversations with, Mehaffey."

For the reasons stated, the judgment of the trial court is reversed and the case is remanded for judgment for appellant in accordance with the prayer of her petition.—Reversed and remanded.

All JUSTICES concur.