*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0590**

State of Minnesota,
Respondent,

vs.

Edgard Francisco Talave Latino,
Appellant.

**Filed March 18, 2024**
**Affirmed**
**Slieter, Judge**

Meeker County District Court
File No. 47-CR-21-1102

Keith Ellison, Attorney General, Peter Magnuson, Assistant Attorney General, St. Paul, Minnesota; and

Brandi Schiefelbein, Meeker County Attorney, Litchfield, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larson, Presiding Judge; Cochran, Judge; and Slieter, Judge.

**NONPRECEDENTIAL OPINION**

**SLIETER**, Judge

In this direct appeal from judgments of conviction of first-degree burglary, third-degree criminal sexual conduct, and domestic assault, appellant claims that all three convictions must be reversed for insufficient evidence. As to burglary and criminal sexual

conduct, appellant claims that the victim's testimony was not credible. As to domestic assault, appellant claims that the state did not sufficiently prove that he and the victim were involved in a significant or romantic relationship at the time of the offense. Because the district court found the victim's testimony credible, and that a past significant or romantic relationship is within the statutory definition of a family or household member, we affirm.

**FACTS**

In November 2021, M.T.L. informed law enforcement that she had been sexually assaulted by her ex-boyfriend, appellant Edgard Francisco Talave Latino, after he had entered her apartment without permission.

Respondent State of Minnesota charged Latino with: (1) first-degree burglary involving assault, in violation of Minn. Stat. § 609.582, subd. 1(c) (2020); (2) third-degree criminal sexual conduct, in violation of Minn. Stat. § 609.344, subd. 1(c) (Supp. 2021); and (3) misdemeanor domestic assault, in violation of Minn. Stat. § 609.2242, subd. 1(2) (2020).

Latino waived his right to a jury trial. The district court held a three-day court trial in October 2022, which included testimony by M.T.L. and Latino. The following facts derive from the testimony and evidence received at trial, together with the district court's written factual and credibility findings.

In 2020, Latino moved into the apartment complex where M.T.L. resided and the two became romantically involved. Their relationship continued after Latino moved to a different apartment, though his behavior toward her became increasingly possessive and controlling.

2

On November 12, 2021, Latino called M.T.L. and accused her of taking his passport. M.T.L. denied taking it, told him that she did not want to talk to him, and stated she did not want him to come to her apartment. Latino drove to her apartment and repeatedly asked her to let him inside. When M.T.L. told Latino to leave, he responded that he would not leave until he saw her. Latino was inside her apartment a few seconds later.

Latino admitted that he entered M.T.L.'s apartment without her permission. After Latino entered M.T.L.'s apartment without permission, M.T.L. again told Latino to leave. Upset by this, Latino grabbed M.T.L. by the shoulders and pushed her down the hallway, causing her head to hit the wall. As he pushed her down the hallway, Latino told M.T.L. that he wanted to have sex.

Latino pushed her down on the bed, placed his mouth on M.T.L.'s vagina, and used his tongue to vaginally penetrate her as she yelled, stomped her feet, tried to escape his grasp, and demanded that he stop. Afterward, Latino hit M.T.L.'s chest twice with a closed fist, took her cell phone, and left her apartment. After Latino left, M.T.L. went to her sister's home and then to the police station to report the incident.

The district court found Latino guilty and convicted him of all three counts. He received a 48-month sentence on Count 1 and a concurrent 96-month sentence on Count 2 with a 10-year conditional-release term.[1]

Latino appeals.

---

[1] We note that, though no sentence was imposed for Count 3, a conviction was entered. During sentencing, the district court stated that Count 3 was part of the same behavioral incident as Counts 1 and 2. Latino does not challenge this determination on appeal.

**DECISION**

Latino seeks reversal of his burglary and criminal-sexual-conduct convictions, claiming we ought not defer to the district court's credibility determinizations, which found that M.T.L. was more credible than Latino. And Latino argues that, absent those credibility findings, the evidence is insufficient to support the findings of guilt. Latino also seeks reversal of his domestic-assault conviction, claiming that the district court misapplied the law.[2]

When evaluating whether a conviction fails for insufficient evidence, "[appellate courts] use the same standard of review in bench trials and in jury trials." *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011). We "carefully examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the [fact-finder] to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016) (quotation omitted). In so doing, "we defer to the fact-finder's credibility determinations and assume that the fact-finder disbelieved any evidence that conflicted with the verdict." *State v. Barshaw*, 879 N.W.2d 356, 366 (Minn. 2016) (quotation omitted).

Direct evidence is "evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *State v. Clark*, 739

---

[2] Latino also filed a *pro se* supplemental brief that recounts his perspective of the facts of this case in exhaustive detail, so that we can "see the truth of the events that took place." We do not separately address it because he does not raise any legal issue or argument that differs from those raised by his counsel.

N.W.2d 412, 421 n.4 (Minn. 2007). Circumstantial evidence "requires an inferential step to prove a fact that is not required with direct evidence." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (quotation omitted). And when each element of an offense is supported by direct evidence, this court's review is limited "to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the [fact-finder] to reach the verdict which [it] did." *State v. Horst*, 880 N.W.2d 24, 39-40 (Minn. 2016) (quotation omitted).

Generally, "a conviction can rest on the uncorroborated testimony of a single credible witness." *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004) (quotation omitted). And in prosecutions for criminal-sexual-conduct offenses, "the testimony of a victim need not be corroborated." Minn. Stat. § 609.347, subd. 1 (2020).

### First-degree Burglary and Third-degree Criminal Sexual Conduct

For first-degree burglary involving assault, the state must prove that the defendant "enter[ed] a building without consent," and "assault[ed] a person within the building." Minn. Stat. § 609.582, subd. 1(c).

For third-degree criminal sexual conduct, the state must prove that the defendant "use[d] force" to "engage in sexual penetration with another person." Minn. Stat. § 609.344, subd. 1(c).

The state relied on the direct evidence of M.T.L.'s testimony to establish the elements of burglary and criminal sexual conduct.

M.T.L. testified that Latino entered her apartment without her consent, that she was startled when she realized he was there, and that he remained in the apartment after she

5

told him to leave. She also testified that she told Latino she did not want to have sex, that she did not consent to sexual penetration, and that Latino inserted his tongue into her vagina despite her repeated demands to stop. The district court found M.T.L.'s testimony credible and Latino's testimony not credible.

Latino points to several facts which he believes create "reasons to doubt" M.T.L.'s credibility. We are not persuaded.

The district court made detailed credibility findings, and when "determining whether the evidence is sufficient, we defer to the fact-finder's credibility determinations." *Barshaw*, 879 N.W.2d at 366. Latino's reference to a trilogy of cases to support his claim that we should depart from our well-rooted precedent of deferring to the fact-finder's credibility determinations is unpersuasive because those decisions are readily distinguishable based upon their unique facts. *See State v. Huss*, 506 N.W.2d 290, 290-93 (Minn. 1993) (reversing for insufficient evidence when the only evidence was provided by a very young child with contradictory testimony on central issues); *State v. Langteau*, 268 N.W.2d 76, 77 (Minn. 1978) (reversing for insufficient evidence when the jury reached a speedy determination that, "[u]nder the circumstances, . . . The interests of justice [require] a new trial"); *State v. Gluff*, 172 N.W.2d 63, 63-66 (Minn. 1969) (reversing when there was reason to question the identification of the defendant). The facts that Latino believes create reason to doubt M.T.L.'s testimony were before the district court, and the district court was not persuaded. *See State v. Franks*, 765 N.W.2d 68, 73 (Minn. 2009) (rejecting an appellant's argument that the evidence was insufficient to support the conviction because

"[o]ur precedent does not permit us to re-weigh the evidence . . . . [It] requires that we construe the evidence in the light most favorable to the verdict").

In sum, we defer to the district court's explicit credibility findings and conclude there exists sufficient evidence to support the district court's findings of guilt of first-degree burglary and third-degree criminal sexual conduct.

### *Domestic Assault*

Latino argues that there is insufficient evidence to find him guilty of domestic assault because the state failed to prove he was involved in a significant romantic or sexual relationship with M.T.L. on the date of the assault.

When a claim challenging a conviction for insufficient evidence involves the question of whether a defendant's conduct meets the statutory definition of an offense, the issue is a question of statutory interpretation that appellate courts review *de novo*. *State v. Hayes*, 826 N.W.2d 799, 803 (Minn. 2013).

The state must prove that the defendant committed an assault against "a family or household member as defined in section 518B.01, subdivision 2." Minn. Stat. § 609.2242, subd. 1 (2020). Pursuant to Minn. Stat. § 518B.01, subd. 2(b)(7) (Supp. 2021), "persons involved in a significant romantic or sexual relationship" qualify as a family or household member.

The crux of Latino's argument is that, although the state presented evidence of a *former* sexual relationship, it did not prove that he and M.T.L. were *currently* involved in such a relationship at the time of the assault. We are not convinced.

Section 518B.01, subdivision 2(b), provides that:

> In determining whether persons are or *have been* involved in a significant romantic or sexual relationship . . . the court *shall* consider the length of time of the relationship; type of relationship; frequency of interaction between the parties; and, *if the relationship has terminated, length of time since the termination*.

Minn. Stat. § 518B.01, subd. 2(b) (Supp. 2021) (emphasis added). In *Sperle v. Orth*, we expressly rejected the argument that persons "were not family or household members . . . [if] they were not currently involved in a significant romantic or sexual relationship." 763 N.W.2d 670, 671-72 (Minn. App. 2009). We held that "a former relationship may qualify as a significant romantic or sexual relationship" pursuant to the statute. *Id.* at 675. "[T]he legislature's intent to include former relationships within the significant-romantic-or-sexual-relationship category is clearly discernible from the plain and unambiguous language of section 518B.01, subdivision 2(b)." *Id.* at 674.

In sum, Latino does not dispute that he and M.T.L. were in a past significant romantic or sexual relationship, which means that M.T.L. was a family or household member according to statute. Therefore, there exists sufficient evidence to support the finding of guilt for domestic assault.

**Affirmed.**